**NEIMAN–MARCUS et al. v. LAIT et al.**

United States District Court
S. D. New York.

Dec. 15, 1952.

15. 4 Barron, Federal Practice and Procedure 16.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Arnold, Fortas & Porter, Washington, D. C., for plaintiffs.

Hyman I. Fischbach, New York City (Vincent J. Crowe, New York City, of counsel), for defendants.

IRVING R. KAUFMAN, District Judge.

The defendants have moved to dismiss the amended complaint in this action (1) as to those plaintiffs described as salesmen and saleswomen for failure to state a claim upon which relief can be granted, and (2) in its entirety for failure to comply with the Federal Rules of Civil Procedure, 28 U.S.C.A., or in the alternative to require plaintiffs to serve an amended complaint in which the claim of each plaintiff shall be separately stated.

The defendants are authors of a book entitled "U.S.A. Confidential". The plaintiffs are the Neiman-Marcus Company, a Texas corporation operating a department store at Dallas, Texas, and three groups of its employees. They allege that the following matter libelled and defamed them:

"Pages 39–40:

"The telephone had come into its own. Whores are 'call girls,' 'party girls' or 'company girls.' Instead of your visiting them, they come to see you.

"This resulted in a complete change in the economic set-up of the oldest profession. Since houses are not needed, neither are large investments. Without houses immovably located, pay-offs to bluecoats on the beat have become almost extinct and so, for that matter, have raids. Only the lowest streetwalkers are collared. Meanwhile, the price is up; the old 50-cent house girl is insulted with $10 for a quick visit to your hotel room. The younger, fresher and smarter talent asks $100 and frequently gets it.

\* \* \* \* \* \*

"Some people call them call girls and others refer to them as party girls; because you call them when you want a party.

"Page 196:

"He [Stanley Marcus, president of plaintiff Neiman-Marcus Company] may not know that some Neiman models are call girls—the top babes in town. The guy who escorts one feels in the same league with the playboys who took out Ziegfeld's glorified. Price, a hundred bucks a night.

"The salesgirls are good, too—pretty, and often much cheaper—twenty bucks on the average. They're more fun, too, not as snooty as the models. We got this confidential, from a Dallas wolf.

"Neiman-Marcus also contributes to the improvement of the local breed when it imports New York models to make a flash at style shows. These girls are the cream of the crop. Oil millionaires toss around thousand-dollar bills for a chance to take them out.

"Neiman's was a women's specialty shop until the old biddies who patronized it decided their husbands should get class, too. So Neiman's put in a men's store. Well, you should see what happened. You wonder how all the faggots got to the wild and wooly. You thought those with talent ended up in New York and Hollywood and

13 F.R.D.—20½

the plodders got government jobs in Washington. Then you learn the nucleus of the Dallas fairy colony is composed of many Neiman dress and millinery designers, imported from New York and Paris, who sent for their boy friends when the men's store expanded. Now most of the sales staff are fairies, too.

"Page 208:

"Houston is faced with a serious homosexual problem. It is not as evident as Dallas', because there are no expensive imported faggots in town like those in the Neiman-Marcus set."

The original complaint, filed in this action on April 14, 1952, was dismissed, with leave to amend, insofar as it related to the individual plaintiffs, pursuant to the opinion of the Hon. Thomas J. Murphy, dated August 19, 1952, 107 F.Supp. 96. The dismissal was based on the failure of the individual plaintiffs to specify that they were members of the libelled groups at the time the cause of action is alleged to have arisen, and also that they failed to disclose the numerical size of the groups at such time.

The individual plaintiffs have cured these defects in the amended complaint and they now state that they were employed by the Neiman-Marcus Company at the time the alleged libel was published and that the groups of individual plaintiffs are composed as follows:

(1) Nine individual models who constitute the entire group of models at the time of the publication [Amended Complaint, pars. 3, 12];

(2) Fifteen salesmen of a total of twenty-five suing on their own behalf and on behalf of the others pursuant to Rule 23(a) (3) of the Federal Rules of Civil Procedure [Amended Complaint, pars. 4, 8];

(3) Thirty saleswomen of a total of 382 suing on their own behalf and on behalf of the others pursuant to Rule 23(a) (3), supra. [Amended Complaint, pars. 5, 9].

The first part of defendants' motion is to dismiss the amended complaint as to the

salesmen and saleswomen for failure to state a cause of action for libel since, it is alleged, no ascertainable person is identified by the words complained of.

At the outset there is the choice of law problem broached in Judge Murphy's opinion but not decided because of other defects in the original complaint. The choice of law problem is fully set forth in the opinion of the Court of Appeals for this Circuit in Mattox v. News Syndicate Co., 1949, 176 F.2d 897, 12 A.L.R.2d 988, certiorari denied, 1949, 338 U.S. 858, 70 S.Ct. 100, 94 L.Ed. 525. In affirming a libel verdict in favor of the plaintiff the Court stated:

> "This being a case of diverse citizenship, we are first to inquire whether the law of New York takes, as the measure, or pattern of liabilities for torts committed elsewhere, the law of the state where the wrongful conduct occurred. We have been unable to find any cases dealing with libel; but the New York courts generally accept the doctrine as to torts that the lex loci delecti is the standard, and there can be no distinction as to libel, provided the law of New York recognizes Virginia as the place where the wrong occurred. On that question there are no New York decisions, so far as we can find, and elsewhere there has been no authoritative answer, although there has been some discussion, especially in a 'Note' in 60 Harvard Law Review 941. The Restatement of Conflicts lays it down that the place of the wrong is 'the place of communication,' and that is obviously true, but it does not tell what law should govern when the libel is 'communicated' in several jurisdictions. Even though we group all copies of a single issue published in one state as a single tort, as we must, it is possible to view the publication in one state as a wholly separate tort from that in any other, and that has at least the merits of simplicity in theory. The difficulty is that in application it would prove unmanageable.

> "We assume that in any event a plaintiff must recover in one action all his damages for all the publications, wherever made; but, if the publication in each state is a separate wrong, the extent of the liability may vary in the separate jurisdictions; for instance, in the case at bar the law of New York may differ from that of Virginia. It would certainly be an unworkable procedure to tell a jury that they should award damages, so far as they were suffered in State X, according to one measure, and, so far as they were suffered in State Y, according to another. Judge Wyzanski discussed the question in Kelly v. Loew's, Inc. [D.C., 76 F. Supp. 473], but did not decide it, because he found the answer in the established law of Massachusetts; and we, too, need not answer it in the case at bar, though for another reason. On the record the plaintiff was not a person of prominence, and it does not appear that she was known outside Virginia; in any event there is no suggestion that she was known in New York. Since it does not appear that she suffered any damages in that or in any other state, it was not an error for the judge to rule upon the evidence upon the assumption that the only damages were suffered in Virginia; and it is of course irrelevant that in so ruling he was not consciously following our foregoing reasoning." 176 F.2d at page 900.

Thus, while the Court of Appeals believed it "unmanageable", it evidently recognized that in accordance with accepted tort law principles, a plaintiff has a right of recovery for libel in each state of a multi-state publication. The publication in this case was allegedly done *simultaneously* in every state in the country [Amended Complaint, par. 13]. Accordingly it is not feasible to choose the law of any one state as controlling at this stage of the action. It may be necessary because of "unmanageability" to impose a choice of

law at the trial of this action, but this is a matter which need not be passed on at this time.

■ This Court is of the opinion that the motion to dismiss the salesmen's and saleswomen's causes of action must be denied at this stage of the proceedings, if such plaintiffs have a cause of action in any state of the United States in which it is alleged the defendants' book was distributed to the public.

■ An examination of the case and text law of libel reveals that the following propositions are rather widely accepted:

(1) Where the group or class libelled is large, none can sue even though the language used is inclusive. Fowler v. Curtis Pub. Co., D.C.D.C.1948, 78 F.Supp. 303 affirmed, 1950, 86 U.S.App.D.C. 349, 182 F.2d 377; Service Parking Corp. v. Washington Times Co., 1937, 67 App.D.C. 351, 92 F.2d 502; Watts-Wagner Co. v. General Motors Corp., D.C.S.D.N.Y.1945, 64 F.Supp. 506; Restatement of Torts, § 564, Comment (c); Gatley, Libel and Slander (3rd Ed. 1938) pp. 123–124.

(2) Where the group or class libelled is small, and each and every member of the group or class is referred to, then any individual member can sue. Weston v. Commercial Advertiser Ass'n, 1906, 184 N.Y. 479, 77 N.E. 660; Bornmann v. Star Co., 1903, 174 N.Y. 212, 66 N.E. 723; Chapa v. Abernethy, Tex.Civ.App., 1915, 175 S.W. 166; Gatley, Libel and Slander (3rd Ed. 1938) pp. 123–124; Restatement of Torts, § 564, Comment (c).

Conflict arises when the publication complained of libels *some* or *less than all* of a designated small group. Some courts say no cause of action exists in any individual of the group. Latimer v. Chicago Daily News, Inc., 1947, 330 Ill.App. 295, 71 N.E. 2d 553; Kassowitz v. Sentinel Co., 1938, 226 Wis. 468, 277 N.W. 177. Other courts in other states would apparently allow such an action. Montgomery Ward & Co. v. Skinner, 1946, 200 Miss. 44, 25 So.2d 572; cf.

Hardy v. Williamson, 1891, 86 Ga. 551, 12 S.E. 874; Kenworthy v. Journal Co., 1906, 117 Mo.App. 327, 93 S.W. 882.

While no choice of law is made at this time, it appears from the complaint that Texas or New York law will be of greatest importance at the trial because of the many contacts with these states; not of small significance is the fact that the individual plaintiffs' community and place of livelihood is in Texas (Amended Complaint, par. 20).

The courts of Texas do not seem to have spoken on the "some" allegation of libel. A reading of the New York cases indicates a trend towards submitting to the jury the question as to whether the "charge against several individuals, under some general description or general name * * * has the personal application averred by the plaintiff." Gross v. Cantor, 1936, 270 N.Y. 93, 96, 200 N.E. 592, 593; Kirkman v. Westchester Newspapers, 1st Dept., 1941, 261 App.Div. 181, 24 N.Y.S.2d 860, reversed 1942, 287 N.Y. 373, 39 N.E.2d 919.

The Court of Appeals for this Circuit has referred to the Restatement of Torts for the "general law". Mattox v. News Syndicate Co., supra, 176 F.2d at page 901. If we do so in this instance, we find that Illustration 2 of § 564, Comment (c) reads as follows:

"A newspaper publishes the statement that some member of B's household has committed murder. In the absence of any circumstances indicating that some particular member of B's household was referred to, the newspaper has defamed each member of B's household."

Thus the Restatement of Torts would authorize suit by each member of a small group where the defamatory publication refers to but a portion of the group. This result seems to find support in logic and justice, as well as the case law mentioned above. See Riesman, Group Libel, 42 Col. Law Review 727, 768 (1942). An imputation of gross immorality to *some* of a

small group casts suspicion upon all, where no attempt is made to exclude the innocent.[1]

■ Applying the above principles to the case at bar, it is the opinion of this Court that the plaintiff salesmen, of whom it is alleged that "most * * * are fairies" have a cause of action in New York and most likely other states; where the courts have specifically held to the contrary, a fortiori no cause exists. Defendants' motion to dismiss as to the salesmen for failure to state a claim upon which relief can be granted is denied.[2]

■ The plaintiff saleswomen are in a different category. The alleged defamatory statement in defendants' book speaks of the saleswomen generally. While it does not use the word "all" or similar terminology, yet it stands unqualified. However, the group of saleswomen is extremely large, consisting of 382 members at the time of publication. No specific individual is named in the alleged libellous statement. I am not cited to a single case which would support a cause of action by an individual member of any group of such magnitude. The courts have allowed suit where the group consisted of four coroners [Weston v. Commercial Advertiser Ass'n, supra], twelve doctors composing the residential staff of a hospital [Bornmann v. Star Co., supra], a posse [Chapa v. Abernethy, supra] twelve radio editors [Gross v. Cantor, supra], and in similar cases involving small groups.

■ But where the group or class disparaged is a large one, absent circumstances pointing to a particular plaintiff as the person defamed, no individual member of the group or class has a cause of action. Restatement of Torts, § 564(c); Gatley, Libel and Slander (3rd Ed. 1938) pp. 123–124.

Thus actions for libel have failed where the groups libelled consisted of all *officials* of a state-wide union, Noral v. Hearst Publications, Inc., 1940, 40 Cal.App.2d 348, 104 P.2d 860; all the taxicab drivers in Washington, D. C., Fowler v. Curtis Pub. Co., D.C.D.C.1948, 78 F.Supp. 303, affirmed 1950, 86 U.S.App.D.C. 349, 182 F.2d 377; the parking lot owners in downtown Washington, D. C. (10 to 12 in number), Service Parking Corp. v. Washington Times Co., 1937, 67 App.D.C. 351, 92 F.2d 502; or the members of a clan, Louisville Times v. Stivers, 1934, 252 Ky. 843, 68 S.W.2d 411, 97 A.L.R. 277.

Giving the plaintiff saleswomen the benefit of all legitimate favorable inferences, the defendants' alleged libel cannot reasonably be said to concern more than the saleswomen as a class. There is no language referring to some ascertained or ascertainable person. Nor is the class so small that it follows that defamation of the class infects the individual of the class. This Court so holds as a matter of law since it is of the opinion that no reasonable man would take the writers seriously and conclude from the publication a reference to any individual saleswoman. Weston v. Commercial Advertiser Ass'n, supra, 184 N.Y. at page 485, 77 N.E. 660; Watts-Wagner Co. v. General Motors Corp., supra.

■ While it is generally recognized that even where the group is large, a member of the group may have a cause of action if some particular circumstances point to the plaintiff as the person defamed, no such circumstances are alleged in the amended complaint. This further exception is designed to apply only where a plaintiff can satisfy a jury that the words referred solely or especially to himself. Odgers, Libel and Slander (6th Ed.) p. 128. The plaintiffs' general allegation that the alleged

---

1. It should be noted that defendants have not moved to dismiss as to the plaintiff models. If this is a concession of a valid cause of action on the part of the models, it is difficult to perceive a legalistic distinction between the statements that "some Neiman models are call girls" and "most of the sales staff are fairies."

2. This Court makes no decision as to the degree of proof which will be required for the plaintiffs to take their case to the jury, a matter which is discussed at great length and with varying views in the majority and dissenting opinions in Kenworthy v. Journal Co., 1906, 117 Mo. App. 327, 93 S.W. 882.

libellous and defamatory matter was written "of and concerning * * * each of them" is insufficient to satisfy this requirement. Cf. Noral v. Hearst Publications, supra.

Accordingly it is the opinion of this Court that as a matter of law the individual saleswomen do not state a claim for libel upon which relief can be granted and the motion to dismiss their cause of action is granted.

 The defendants also allege that the action is improperly brought on behalf of those sales persons similarly situated "who care to join and participate in this action". This issue is now moot as to the saleswomen. So far as the salesmen plaintiffs assume to represent others similarly situated, they do so by virtue of Rule 23(a) (3) of the Federal Rules of Civil Procedure in what is known as a "spurious" class suit. Such a suit has been described as "merely a permissive joinder device in which the right and liability of each individual plaintiff is distinct and no member of the 'class' is bound by a judgment who does not join as plaintiff or intervenor." Schatte v. International Alliance, etc., 9 Cir., 1950, 183 F.2d 685, 687, certiorari denied 1950, 340 U.S. 827, 71 S.Ct. 64, 95 L.Ed. 608. See also California Apparel Creators v. Wieder of California, 2 Cir., 1947, 162 F.2d 893, 896–897, 174 A.L.R. 481, certiorari denied 1947, 332 U.S. 816, 68 S.Ct. 156, 92 L.Ed. 393; Oppenheimer v. F. J. Young & Co., 2 Cir., 1944, 144 F.2d 387, 390. The use of Rule 23(a) (3) is appropriate in this case since there are common questions of law and fact affecting the several rights of the members of the "spurious" salesmen class and common relief is sought against the defendants.

Defendants' contention that the claims of each member of each class should be separately stated also lacks merit as not being in conformity with the spirit of the relatively new Federal Rule 8(a) which requires but "a short and plain statement of the claim showing that the pleader is entitled to relief". Repetition of basic allegations should be and is properly avoided in the amended complaint. See Kainz v. An-heuser-Busch, Inc., 7 Cir., 1952, 194 F.2d 737, 744; Lowe v. Consolidated Edison Co., D.C.S.D.N.Y.1940, 1 F.R.D. 559.

The defendants make the further point that the claims of the various groups are improperly joined in one cause of action, i. e., that the claim of the models is separate and distinct and irrelevant to the claim of the salesmen, and so forth. The Court agrees with this contention. Different allegedly libellous statements were made as to each of the groups in defendants' book. Only the Neiman-Marcus Company may properly be heard to complain as to all of the statements. To allow the joinder of the claims of the two remaining groups of individuals in one cause of action would in my opinion unduly prejudice the defendants at the trial of this action, and in preparation for it.

The amended complaint is dismissed with leave to file separate complaints as to the two groups of individuals and the corporation, all in conformity with this opinion.