Lionel G. ARCAND et al., Plaintiffs,
Appellants,

v.

The EVENING CALL PUBLISHING
COMPANY et al., Defendants,
Appellees.

No. 77–1307.

United States Court of Appeals,
First Circuit.

Argued Nov. 9, 1977.

Decided Dec. 29, 1977.

Alfred B. Cenedella, III, Milford, Mass., with whom Robert B. Calagione, Milford, Mass., was on brief, for appellants.

Neil Sugarman, Boston, Mass., with whom Sugarman & Sugarman, P. C., Boston, Mass., was on brief, for appellees.

Before COFFIN, Chief Judge, and CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

This appeal raises the question whether defendants' allegedly defamatory newspaper column comment made sufficient reference to plaintiffs-appellants to withstand a motion to dismiss the complaint. The case belongs in the ancient but not overpopulated genre of group libel.[1]

Plaintiffs are the twenty-one members of the Bellingham, Massachusetts, Police Department. Defendants are, severally, the Rhode Island writer, editor, and newspaper responsible for the circulation of a column

1. According to Tanenhaus, *Group Libel*, 35 Cornell L.Q. 261, 263 (1950), the earliest instance of an allegation that a group was libeled though the individuals were not specifically named is *Foxcraft v. Lacy*, HOBART 89a, 80 Eng.Rep. 239 (1613).

in the Woonsocket Call and Evening Reporter which closed with the provocative question: "Is it true that a Bellingham cop locked himself and a female companion in the back of a cruiser in a town sandpit and had to radio for help?" Each of the plaintiffs claimed grievous professional and personal damage in the sum of $525,000.

The district court, while discounting the defamatory nature of the statement, acknowledged that it was probably libelous if it could be held to refer to a particular individual. But it granted defendants' motion to dismiss on the basis of what it termed "the Prosser principle".[2] It reasoned: "If you say 11 out of 12 people are corrupt, or if you said 20 out of 21 police officers or maybe even 12 out of 21 are corrupt, or even one out of six is corrupt, I think you would have a different situation . . .. I think it is a combination of the question of numbers and what was said, and I think that as a matter of law, the Court would be obliged to direct an acquittal at the trial of a case of this nature." We affirm.[3]

In this diversity case we look to the substantive law of the appropriate state. We think it clear that the law of Massachusetts, the state of publication, which is also the state of plaintiffs' domicile and occupation, controls. Restatement, Second, Conflict of Laws, § 149. This does not advance us very far for we have found no pertinent statute or case law.[4] We shall proceed on the assumption that Massachusetts law would be in accord with the current state of the authorities, i. e., would not occupy an eccentric minority position.

Over the years several guiding principles have emerged. One is that "Defamation of a large group gives rise to no civil action on the part of an individual member of the group unless he can show special application of the defamatory matter to himself." Tanenhaus, *Group Libel*, 35 Cornell L.Q. 261, 263 (1950); Restatement, Torts, Second, § 564A, Comment a, *Neiman-Marcus v. Lait*, 13 F.R.D. 311 (S.D.N.Y. 1952) (complaint that a group of 382 saleswomen had been generally called prostitutes was dismissed because group was too large to infer defamation of a member thereof).

A second principle recognizes a civil action if a defamatory statement applies to all members of a small group. 35 Cornell L.Q. 261, 263, *supra* ; *Neiman-Marcus v. Lait, supra* (defamation of all of group of 9 models and 25 salesmen); *Fawcett Publications, Inc. v. Morris, supra*, 377 P.2d at 42 (statement covering all members of Oklahoma University football team); Harper and James, The Law of Torts, Vol. 1, p. 367 (1956); Restatement, Torts, Second, § 564A, Comment b.

A third principle is that defamation of part of a group can give rise to a cause of action. As the Restatement puts it, "In general, there can be recovery only if a high degree of suspicion is indicated by the particular statement. Thus the assertion that one man out of a group of 25 has stolen an automobile may not sufficiently defame any member of the group, while the statement that all but one of a group of 25 are thieves may cast a reflection upon each of them." Restatement, Torts, Second, § 564A, Comment c; *Neiman-Marcus v.*

2. The court had reference to the following comment: "A statement that 'all but one' of twelve are corrupt would seem clearly to affect the entire dozen, where the conclusion scarcely seems justifiable as to one out of twenty." Prosser, Law of Torts, p. 751 (4th ed. 1971).

3. We need not decide whether the statement was libelous, *see Fawcett Publications, Inc. v. Morris*, 377 P.2d 42 (Okl.1962). Our decision rests on a comparison of the number of complainants and the size of the group alleged to have been defamed.

4. In *Ellis v. Kimball*, 33 Mass. 132, 135 (1834), we find the following statement which does not quite fit the kind of group defamation alleged here: "[W]here slanderous or libellous matter is published against a class or aggregate body of persons, an individual member, not specially included or designated, cannot maintain an action, for this, among other reasons, that the body may act very corruptly or disgracefully, yet the individual may have been in the minority and may have opposed the measures alluded to."

*Lait, supra,* 13 F.R.D. at 315; Riesman, *Democracy and Defamation: Control of Group Libel,* 42 Colum.L.Rev. 727, 768 (1942).

As might be expected, courts have differed in their allowance of suits involving the defamation of fewer than all members of small groups. Plaintiffs cite *Farrell v. Triangle Publications, Inc.,* 399 Pa. 102, 159 A.2d 734 (1960) (defamation of "a number of township commissioners", of whom there were 13; individual commissioner allowed to sue). On the other hand, as recently as 1950, the catalogue of cases in this category could be reported as follows: "Actions by individuals were unsuccessful against publications alleging that most of the persons at a donation party were there for the liquor, part of a named association consisted of a gang of blackmailers, some members of a particular hose company had committed a theft, one of a man's sons was a thief, and that several of a group of six witnesses would be indicted for perjury. The courts did, on the other hand, find that 'subordinate engineers of a construction company or some of them,' and 'all radio editors save one' were sufficiently narrow categories to permit suits." [Citations omitted.] 35 Cornell L.Q. at 264–65.[5]

Our case would be different if we were confronted with a statement defaming a number of members of a small group. In such an instance, there would seem to be sufficient doubt as to whether the statement could refer to any single member of the group as to justify invoking the aid of a jury. That is, the defamation, encompassing a considerable proportion of the group, can be seen as a blanket slur, reaching all. But here we deal with a defamatory statement aimed at only one unidentified member of a group of 21. By no stretch of imagination can it be thought to suggest that the conduct of the one is typical of all. Noting the individual's membership in the group does not suggest a common determinant of character so much as simply a practical reference point.

This is not to say that each member of a small group does not feel some unease whenever a co-member comes in for criticism, shame, or obloquy. But to predicate liability to all members of a group on such an associational attitude would chill communication to the marrow. Under plaintiffs' theory, statements that a member of the X baseball team was disciplined for brawling, that one of the judges of Y court fell asleep, that a member of the Z band was drunk would be fair game for group libel suits.

We need not decide whether, as appellants argue, the march of law has made obsolete some of the old cases barring suit when fewer than an entire group are defamed. But we have discovered no case where a group libel, justifying suit by all members, was held to arise from a slur against one unidentified member. Particularly where the ratio of the defamed to the total group is 1 to 21, dismissal must be justified. Both Prosser and the Restatement, as we have noted, have cited hypothetical examples almost identical to this case as warranting dismissal. Were dismissal in such cases not justified, virtually every complaint of group libel would present a jury issue. We therefore hold that the district court properly held as a matter of law that a statement defaming one unidentified member of a twenty-one man police group does not give rise to a cause of action in favor of the members of the group.

*Affirmed.*

---

**5.** As of 1934 it could be asserted that "A special type of group slander or libel is an imputation which in terms refers to but one or several unspecified members of the class. A right of action has been uniformly denied in such cases . . . ." Note, *Liability for Defamation of a Group,* 34 Colum.L.Rev. 1322, 1326–27 (1934).