William LOEB

v.

GLOBE NEWSPAPER CO.

James W. ADAMS, Donald C. Anderson, Earl O. Anderson, John F. Barker, Cecile L. Bucknam, John R. Clarey, Charles M. Crockett, O. Richard Cummings, Arthur C. Egan, Jr., Anne Foye, John W. Hammons, Robert D. Hilliard, Louis H. Kuszek, Paul A. Lacaillade, Louis Mandell, Charles W. Margelot, Charles J. McCarthy, Maurice McQuillen, Nancy M. Meersman, Thomas A. Muller, Guy D. Nadeau, George S. Naum, R. Warren Pease, Frederick E. Todd

v.

GLOBE NEWSPAPER CO.

James R. BUCKNAM, James J. Finnegan, Bernard J. McQuaid

v.

GLOBE NEWSPAPER CO.

Nos. CA72–0897–Z, CA72–1028–Z and CA72–1029–Z.

United States District Court, D. Massachusetts.

Feb. 1, 1980.

482

Robert Haydock, Jr., Bertram E. Snyder, James F. McHugh, Thomas H. Walsh, Jr., of Bingham, Dana & Gould, Boston, Mass., for Globe Newspaper Co.

James J. Barry, Jr., Stuart M. Van Tine, Ralph Warren Sullivan, of Malloy, Sullivan & Sullivan, Hingham, Mass., for William Loeb, James W. Adams, et al., and James R. Bucknam, et al.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiffs in these cases are the publisher (*Loeb v. Globe Newspaper Co.*, CA72–0897), editors (*Bucknam v. Globe Newspaper Co.* CA72–1029), and other employees (*Adams, et al. v. Globe Newspaper Co.* CA72–1028) of the Manchester (New Hampshire) *Union Leader*, a daily newspaper. They claim that the Boston *Globe*, another daily newspaper, "maligned" and "defamed" them in its editorials and in a syndicated column. The cases are before the court on defendant's motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In each of the actions defendant asserts that no material facts are in issue and that in each it is entitled to judgment as a matter of law.

## FACTS

In the winter of 1972, the Manchester *Union Leader* received nationwide attention for its coverage of the New Hampshire Presidential Primary. During the course of the primary, the publisher of the newspaper engaged in a celebrated exchange with one candidate, and, as appears from the exhibits, the newspaper was dominated by colorful reporting and commentary on the primary, in the course of which the *Union Leader* itself became a popular topic of media commentary. The newspaper was the subject of at least three pieces in the Boston *Globe*, and those publications gave rise to the instant claims.

Plaintiffs in *Bucknam* and *Adams*, respectively *Union Leader* editors and staff members, complain of the same statements, both made in an "Opposite the Editorial Page" column in the March 7, 1972 issue of the Boston *Globe*: that the *Union Leader* is "probably the worst newspaper in America", and that the publisher of the *Union Leader* "runs a newspaper by paranoids for paranoids." In *Loeb*, the publisher of the *Union Leader* relies on the same statements as well as six others. Loeb includes four excerpts from a March 7, 1972 editorial: that he had been fined three million dollars in a prior legal action, that he "edits his paper like a 19th Century yellow journal", that his views are "venomous" and that his newspaper is a "daily drip of venom". In addition, he complains of a *Globe* cartoon of March 1, 1972 (attached) in which he is depicted with a cuckoo springing from his forehead. He also complains of a statement in a March 9, 1972 editorial that he "never backed a presidential winner." [1] In each of the three claims, plaintiffs argue that the publications were false and derogatory and that professional and social harms resulted from publication.

### *Bucknam, et al. v. Globe Newspaper Co. CA72–1029–Z*

### *Adams, et al. v. Globe Newspaper Co. CA72–1028–Z*

These actions are brought by three *Union Leader* editors (*Bucknam*) and twenty-four other employees (*Adams*), among them office boys, reporters and assistant editors, who claim that two excerpts of a 1972 *Globe* editorial set out above are false and derogatory statements which libel them.

In support of its motions for summary judgment, defendant argues that the claims are barred as a matter of law because the excerpts in question are not sufficiently specific in their reference to plaintiffs to support tort liability. Defendant is correct.

■ A "guiding principle" in group libel law [2] was not long ago enunciated by the Court of Appeals for the First Circuit thus: "Defamation of a large group gives rise to no civil action on the part of an individual member of the group unless he can show special application of the defamatory matter to himself," *Arcand v. Evening Call Pub. Co.*, 567 F.2d 1163, 1164 (1st Cir. 1977), citing, *inter alia*, Restatement, Torts, Second, § 564A, Comment a; *Neiman-Marcus v. Lait*, 13 F.R.D. 311 (S.D.N.Y.1952).

■ In *Adams*, the twenty-four plaintiffs represent a small group of employees from the total 325 individuals employed by the *Union Leader* in March 1972. [3] They state without explanation that "the libel was directed at the editorial management and

---

1. The first five excerpts are identified in the complaint. Complaint, *Loeb v. Globe Newspaper Co.*, at 3. The final excerpt appears in an article attached to the original complaint. The allegedly defamatory excerpt in the attached article was noted in oral argument.

2. In this diversity action, where the publication and distribution of the alleged libel were in Massachusetts, the law of Massachusetts will apply. Restatement, Second, Conflict of Laws § 149, *Arcand v. Evening Call Pub. Co.*, 567 F.2d 1163, 1164 (1st Cir. 1977). As the Court

of Appeals has observed, however, *id.*, 567 F.2d at 1164, case law in this area is scant, and, there is no suggestion that Massachusetts law deviates from the current state of general tort law authority.

3. "As of March 7, 1972, the date on which [the alleged defamation] was published by *The Boston Globe*, there were 325 employees of The Union Leader Corporation." Stipulation of Counsel for Plaintiffs (August 14, 1972).

staff", of which they profess to be members, but beyond that assertion venture no support for a claim of the "special application of the defamatory matter to [themselves]," *Arcand v. Evening Call Pub. Co.*, 567 F.2d at 1164. See also Restatement, Torts (Second) § 564A(b) (plaintiff must show that "the circumstances of publication reasonably give rise to the conclusion that there is particular reference to . . . [him]"). In *Arcand v. Evening Call Pub. Co., supra*, the Court supported the predisposition against group libel with the holding of *Neiman-Marcus v. Lait, supra*, a case very similar on its facts to *Adams* and *Bucknam*. In *Neiman-Marcus*, the Court observed that the "complaint that a group of 382 saleswomen had been generally called prostitutes was dismissed because [the] group was too large to infer defamation of a member thereof", 567 F.2d at 1164. There is little to distinguish *Neiman-Marcus* from this case except, possibly, that the insufficiently particular reference to "saleswomen" in *Neiman-Marcus* was far more specific than either of the general characterizations of the *Union Leader*. The publication in question does not reasonably give rise to the conclusion that there is "special application", *Arcand v. Evening Call Pub. Co., supra*, at 1164 or "particular reference", Restatement, Torts, Second, § 564A(b) to these twenty-four office boys, reporters and assistant editors, or to any of them. No tort liability can therefore be held to lie, and with respect to their claim, defendant's motion for summary judgment is allowed.

In *Bucknam*, three of the *Union Leader*'s eight editors at the time of the alleged libel asserted claims identical to those set forth in *Adams*.[4] The claims differ, presumably, because these plaintiffs are editors, and it may be argued—as an alternative argument to that made in *Adams*—that the *Bucknam* plaintiffs would be likelier targets of a general criticism of the newspaper by virtue of their greater authority. Nevertheless, neither pleadings nor affida-

vits suggest that the *Globe* text provides a reasonable basis to focus on these three men, and, as to these three editors no "special application" or "particular reference" can be reasonably inferred from the general commentary published in the *Globe*.

■ *Arcand v. Evening Call Pub. Co., supra*, defines a "second principle" of group libel, that a cause of action may lie "if a defamatory statement applies to all members of a small group". 567 F.2d at 1164. However, a claim cannot come within this second principle merely by denominating a small subset of a large group of plaintiffs, unless the small group so defined reasonably appears to have been identified by the text. Because no "special application" or "particular reference" to this group of three plaintiffs can be inferred from the *Globe* text, there can be no claim of defamation of "all members of a small group", *Arcand v. Evening Call Pub. Co.*, 567 F.2d at 1164. Plaintiffs in *Bucknam* are under the same duty as those in *Adams* to establish tort liability by supporting "special application" or "particular reference" with respect to the individuals denominated as plaintiffs. Because there is no support for such a claim, and because no particular reference to these plaintiffs can be reasonably inferred from the text, the claim in *Bucknam*, like that in *Adams*, is insufficient to give rise to tort liability. Defendant's motion for summary judgment in *Bucknam* is accordingly allowed.

### *Loeb v. Globe Newspaper Co.*
### *CA 72-0897-Z*

Plaintiff Loeb, the publisher of the *Union Leader*, claims that a number of excerpts of *Globe* columns and a political cartoon amount to actionable libel with respect to him. He correctly observes that he is mentioned by name and that criticisms are unmistakably focused on him. In the case of *Loeb*, however, unlike the claims of the *Union Leader* employees, different legal

---

4. Plaintiffs have filed A Suggestion of Death in the case of plaintiff Bernard J. McQuaid. Because this libel action is a personal right of action which does not survive to his estate, it is abated by his death, *Cummings v. Bird*, 115 Mass. 346 (1874), and is accordingly dismissed.

standards apply with respect to defamation, and the balance between a right of action for defamation and the right of editorial freedom is struck with greater deference to the freedom of editorial privilege.

Freedom of editorial expression enjoys the specific protection of the First Amendment. The United States Supreme Court has announced its fundamental importance, *see e.g., Near v. Minnesota, ex rel. Olson*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931) and has discerned "a profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964).

In *New York Times Co. v. Sullivan, supra*, the Supreme Court gave prominence to First Amendment considerations by drawing a broad boundary to describe permissible editorial criticism. That boundary is crossed—and privileged expression becomes actionable defamation—only when criticism or reportage identifies specific subjects, and, if the subject is a public official, only when publication is motivated by "actual malice". *Id.*, 376 U.S. at 279–80; 288, 84 S.Ct. at 725–26; 730. *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) extended similar protection to criticism of "public figures". *Id.*, 388 U.S. at 155, 87 S.Ct. at 1991.

■ *New York Times Co. v. Sullivan, supra*, thus dramatically narrowed the right of public figures to claim defamation. A claim satisfies the "actual malice" exception only when the claimant alleges the defendant's "knowledge that [information] was false", *New York Times Co. v. Sullivan, supra*, at 280, 84 S.Ct. at 726, or "[provides] sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication", *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968). See also *Old Dominion Br. No. 496, Nat. Ass'n Letter Car. v. Austin*, 418 U.S. 264, 284, 94 S.Ct. 2770, 2781, 41 L.Ed.2d 745 (1974). *Time, Inc. v. Firestone*, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976);

*Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970). The claimant must, moreover, prove the assertions with "convincing clarity." *New York Times v. Sullivan*, 376 U.S. at 285, 286, 84 S.Ct. at 728, 729. *Beckley Newspapers Corp. v. Hanks*, 389 U.S. 81, 83, 88 S.Ct. 197, 199, 19 L.Ed.2d 248 (1967). In addition, "the state of mind required for actual malice would have to be brought home to the persons in the [publisher's] organization having responsibility for publication." *New York Times Co. v. Sullivan*, 376 U.S. at 287, 84 S.Ct. at 730. *St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). Thus, to satisfy the requirement of "actual malice", a plaintiff must show that the publication is false, and that the party responsible for publication had knowledge of the falsity or had serious doubts about the truth of the publication.

■ Initially, then, we recognize an explicit editorial freedom in the discussion of public figures: the right to publish an opinion. Hearkening to the words of Thomas Jefferson, the Court recited settled First Amendment law in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974):

> However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.

The law provides no remedies to those public figures who befall the low opinion of critics so long as critics avoid knowing or reckless misstatements of fact. Accordingly, if the plaintiff is a public figure within the meaning of *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), the scope of actionable libel is limited to statements of fact.

■ There is no dispute that Loeb is a "public figure" within the meaning of *Curtis Publishing Co. v. Butts*. His pleadings identify him as "a publisher who regularly takes strong public stands on controversial issues . . . [and who] invites expression of contrary opinion." His self-description neatly fits the Supreme Court's recent definition of public figures: "[those who]

have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved . . . [and who] invite attention and comment." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345, 94 S.Ct. 2997, 3009, 41 L.Ed.2d 789 (1974); *accord, Wolston v. Reader's Digest*, 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979). In fact, counsel concedes that plaintiff is a public figure.[5]

■ In Loeb's action, then, the "public figure" exception developed in *New York Times Co. v. Sullivan, supra*, and *Curtis Publishing Co., supra*, controls. Thus, the *Globe's* editorial opinions are privileged, and with respect to these,[6] defendant is entitled to summary judgment.

■ In addition to its published opinions, three of the *Globe's* editorial comments might arguably be considered statements of fact: the assertion that the plaintiff "never backed a presidential winner", that he "runs a paper by paranoids for paranoids", and that he had once been fined three million dollars in a legal action.

The first two excerpts, however, clearly belie plaintiff's argument that the *Globe* intended to assert historical or medical facts about the plaintiff. As the Supreme Court once observed in a similar instance, "[s]uch words were obviously used here in a loose, figurative sense . . . [and] cannot be construed as representations of fact." *Old Dominion Br. No. 496, Nat. Ass'n, Letter Car. v. Austin*, 418 U.S. 264, 284, 94 S.Ct. 2770, 2781, 41 L.Ed.2d 745 (1974) See also *Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398 U.S. 6, 9–14, 90 S.Ct. 1537, 1539–42, 26 L.Ed.2d 6 (1970). The Supreme Court has unequivocally accorded "rhetorical hyperbole" the same protection as editorial opinion expressed in less flamboyant language. *Greenbelt Cooperative Publishing Association v. Bresler, Id.* A fussy insistence upon literal accuracy "would condemn the press

to an arid, dessicated recital of bare facts." *Time, Inc. v. Johnston*, 448 F.2d 378, 384 (4th Cir. 1971).

As the court observed in *Greenbelt Publishing*, in which a newspaper described a public figure's bargaining position as "blackmail", "it is simply impossible to believe that a reader . . . would not have understood exactly what was meant . . . even the most careless reader must have perceived that the word was no more than 'rhetorical hyperbole'." *Id.*, 398 U.S. at 14, 90 S.Ct. at 1542. Similarly, it is impossible that the *Globe's* "paranoid" and "never backed a presidential winner" commentaries would be taken by readers as assertions of fact. As a matter of law, I find that these statements do not contain such factual assertions as will permit an action for defamation against a public figure. *Greenbelt Publishing Association v. Bresler, supra; Old Dominion Br. No. 496 Nat. Ass'n Letter Car. v. Austin, supra.* Accordingly, there is no legal basis for the claim by the plaintiff, a public figure, that they constitute actionable libel. As to these two excerpts, the defendant's motion for summary judgment is allowed.

The *Greenbelt* standard is not so easily applied to the *Globe's* publication of a syndicated editorial of March 7, 1972 by Robert Strout. That article reported that plaintiff had been fined three million dollars in an antitrust action. The plaintiff alleges that at the time of this publication, defendant "knew or should have known that [the statement was] false." However, in discovery and affidavits plaintiff presents nothing to suggest a factual basis for defendant's actual knowledge of falsity, nor to suggest the defendant's doubt about the truthfulness of the assertion. Instead of providing evidence of "actual malice" he has suggested evidence of ill will. That

---

5. "Plaintiff in *Loeb* is a public figure". *Adams v. Globe Newspaper Co.*, Plaintiff's Memorandum Opposing, In Part, Defendant's Motions to Consolidate and Stay, at 3.

6. The five opinions are the following: the descriptions which include the words "venom-

ous" and "daily drip of venom"; the comments "probably the worst newspaper in America" (March 7), "[he] edits his newspaper like a 19th Century yellow journal" and the cartoon of March 1.

does not address the requirements of *New York Times Co. v. Sullivan.* See *Beckley Newspapers Corp. v. Hanks,* 389 U.S. 81, 82–3, 88 S.Ct. 197, 198–99, 19 L.Ed.2d 248 (1967).

The defendant, on the other hand, has filed affidavits showing that the newspaper carried the weekly column of Strout, a nationally-syndicated and widely respected journalist. It also includes an article from a national news magazine which echoes defendant's respect for Strout's professional reputation. The defendant provides the affidavit of Sumner Barton, the *Globe* news editor, which asserts that Barton was the employee responsible for publishing the column that reported a three million dollar fine. Barton swears that "[he] was not aware of any errors in [the column], nor did [he] have any reason to suspect that it had errors." He, too, asserts his belief in Strout's "reputation as a leading columnist on the American political scene."

■ Plaintiff correctly observes that summary judgment is disfavored in instances in which motive and intent are at issue. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). At the same time, courts must be vigilant to prevent unwarranted inquiries into the exercise of First Amendment rights, lest repeated obligations to vindicate a right create a burden upon its exercise. In short, as the Court determined in *New York Times Co. v. Sullivan, supra,* "[a] rule compelling the critic of official conduct to guarantee the truth of all of his factual assertions—and to do so on pain of libel judgments, virtually unlimited in amount— leads to a comparable 'self-censorship'." 376 U.S. at 279, 84 S.Ct. at 725. The use of summary judgment in this case must balance two competing interests: the obligation to avoid "chilling" the exercise of treasured First Amendment rights, and caution to avoid foreclosing a genuine issue of fact. Other courts have faced this very situation: claimants of libel assert "actual malice" in the defendant's report of facts, and, by affidavit, support not the rigorous requirement of *New York Times Co. v. Sul-*

*livan*—knowledge of falsity or serious doubts of truth—but merely suggest the defendants, ill-will. On the other hand, defendants' affidavits deny knowledge or suspicion of falsity, describe their sources of information, and attest to the reputation and credibility of their sources.

A seminal example is *Washington Post Co. v. Keogh,* 365 F.2d 965 (D.C. Cir.), *cert. denied,* 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967). There the court ordered summary judgment when a claim of actual malice relied only on an assertion in the complaint, plaintiff's inferences from the text in question, and the reputation of the writer. The court rejected the sufficiency of the evidence to withstand the motion for summary judgment: "the Supreme Court held in *Times,* of course, that the character and content of the publication there involved was a constitutionally impermissible evidentiary basis for a finding of actual malice, even though the *Times* had failed to verify its contents." *Washington Post Co. v. Keogh, supra,* 365 F.2d at 969. The court determined that such inapposite evidence of motive, without evidence of the defendant's *actual knowledge* of falsity or doubt of truth was insufficient to withstand a motion for summary judgment. In similar circumstances, this Circuit has followed the same rule. *Medina v. Time, Inc.,* 439 F.2d 1129 (1st Cir. 1971). See also *Hahn v. Sargent,* 523 F.2d 461, 466–8 (1st Cir. 1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976).

■ In the instant case, the plaintiff asserts that the defendant "knew or should have known" that the report of a past three million dollar judgment was false, and that the *Globe* had often attacked the *Union Leader.* This evidence does not address the *New York Times Co.* test of actual malice. "[A] party against whom summary judgment is sought is [not] entitled to a trial simply because he has asserted a cause of action to which a state of mind is a material element. There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim." *Hahn v. Sargent,* 523 F.2d

461, 468 (1st Cir.), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976). As the court determined on the basis of similar evidence in *Washington Post v. Keogh*, "the actual malice test . . . precludes an issue of fact in this case." *Washington Post Co. v. Keogh, supra*, 365 F.2d at 972. The last of plaintiff's defamation claims therefore fails as a matter of law. Defendant's motion of summary judgment in *Loeb v. Globe Newspaper Co.* is granted as to all of plaintiff's claims.

In summary, defendant's motions for summary judgment in *Adams, Bucknam* and *Loeb* are allowed and all three complaints may be dismissed.