NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES/INTERNATIONAL BROTHERHOOD OF POLICE OFFICERS and Kenneth T. Lyons, Plaintiffs,

v.

BUCI TELEVISION, INC., New York Times Company, Boston Globe Newspaper Company, and Judy Rakowsky, Defendants.

No. CIV. A. 00–10083–JLT.

United States District Court, D. Massachusetts.

Oct. 19, 2000.

Joseph W. Monahan, III, Cambridge, MA, for National Ass'n of Government Employees/Intern. Broth. of Police Officers and Kenneth T. Lyons, Plaintiffs.

Jonathan M. Albano, Bingham, Dana & Gould, Sandra E. Grandison, Bingham Dana, Boston, MA, for BUCI Television, Inc., New York Times Co., Boston Globe Newspaper Co. and Judy Rakowsky, Defendants.

## MEMORANDUM

TAURO, District Judge.

Plaintiffs allege copyright infringement, breach of contract, defamation, and false light invasion of privacy. Jurisdiction arises under 28 U.S.C. § 1331 for the federal claim, and under 28 U.S.C. § 1367(a) for the state claims. Defendants Judy Rakowsky and Boston Globe Newspaper Company ("The Globe") move for Summary Judgment on the copyright infringement, defamation, and false light invasion of privacy claims. For the reasons stated below, Defendants' Motion for Summary Judgment is ALLOWED.

### Background

Plaintiff Kenneth Lyons hosts "Challenge: With Ken Lyons" ("Challenge"), a television talk-show. He also serves as the president of Plaintiff National Association of Government Employees ("NAGE"), the parent organization of Plaintiff International Brotherhood of Police Officers (collectively "Plaintiffs"). Defendant Judy Rakowsky is a reporter for Defendant The Globe, a wholly-owned subsidiary of Defendant New York Times Company ("The Times"). Defendant BUCI Television, Inc. ("BUCI") owns WABU–TV 68, which broadcasts Challenge.

In 1998, Newton resident Sydney Altman sued the Town of Newton ("Town") after an altercation with Newton police officer Dennis Geary. The incident began with a disagreement about Altman's dog,

and ended with Altman's arrest and mutual charges of assault. The Town later dropped the charges against Altman and, in August 1999, offered to settle her suit for $150,000. Rakowsky reported on the controversy in an August 18, 1999 Globe article. Lyons later criticized both the Town's settlement offer and the Globe's coverage of the controversy in his August 22, 1999 Challenge broadcast.[1] After presenting Geary's side of the story, Lyons stated:

> **"Mayor Cohen wants to take care of this woman, whose name is Altman, and her husband is an attorney, and he is a deal maker up at the federal building ..."**
>
> "The deal they want to pull off here is the mayor wants to give the Altmans or the Singals (sic), whatever his name is, $150,000 of the taxpayers' money ..."
>
> "The Globe, finally, after a month, they come out with a story, they come out with a story, unbelievable. **Can you imagine that, if that mayor's name was Flynn or Murphy or the people involved, their name was O'Toole?** Why the Globe would have, oh, what a job they would have done on them."

(Tr. of August 22, 1999 Challenge Broadcast, Pls.' Ex. 5 at 3.) (emphasis added).

The Town withdrew its settlement offer on September 7, 1999. A September 8, 1999, Globe article reported that the settlement withdrawal followed "televised appeals" by Geary supporters, and characterized the controversy as "an increasingly ugly dispute tinged with charges of Anti-Semitism." Referring to the above bolded quotes, the article further stated that, in his broadcast, Lyons criticized The Globe's coverage, "decried the $150,000 payment, and suggested that it grew out of a Jewish mayor's efforts to funnel taxpayer money to a Jewish constituent."

Plaintiffs allege that, in retaliation for Lyons' criticism of their coverage, Defendants engaged in a smear campaign to brand Lyons as an Anti–Semite. Plaintiffs claim that The Globe intentionally conflated two distinct quotes of Lyons into the defamatory innuendo of Anti–Semitism; altered a video of NAGE's copyrighted Challenge program given to Rakowsky by Altman's husband, Bruce Singal; and then distributed the altered version to television stations.

### Discussion

Summary Judgment is appropriate where no genuine issue of material fact is disputed, and the moving party is entitled to judgment as a matter of law. See Fed. R.Civ.P. 56(c); Flanders & Medeiros, Inc. v. Bogosian, 65 F.3d 198, 201 (1st Cir. 1995). The nonmoving party may not rest upon the mere allegations in its pleadings, but must respond with evidence that shows there is a genuine issue for trial. See Fed.R.Civ.P. 56(e); Anderson v. Liberty Lobby, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### A. Count I -Federal Copyright Infringement

NAGE alleges that The Globe infringed on NAGE's exclusive rights of use and distribution of the copyrighted Challenge program by illegally acquiring a program tape, altering it, and then distributing copies of the altered version to television stations throughout Massachusetts. See 17 U.S.C. §§ 106, 501.

First, NAGE argues that a BUCI employee breached the NAGE/BUCI contract when he/she gave the tape to Singal, thus rendering Rakowsky's acquisition of the tape from Singal illegal. NAGE further contends that tapes received by other television stations matched the tape allegedly altered by The Globe, proving The Globe's unlawful distribution of the tape.

---

1. Plaintiffs' Amended Complaint consistently refers to the August 15, 1999 broadcast. But, given that Lyons criticized Rakowsky's August 18, 1999 article, the court assumes the August 22, 1999 broadcast is the proper reference.

Defendants responded to NAGE's accusations by producing Rakowsky's Affidavit, in which she acknowledged that Singal gave her a program tape. But, she denied copying, altering or distributing the tape to anyone else. NAGE produced no evidence to counter Rakowsky's Affidavit. It advanced no legal argument as to why Rakowsky's acquisition of the tape from Singal was illegal. Moreover, NAGE has not produced the allegedly altered tape, or even indicated how the altered version differs from the unaltered version. Because NAGE fails to produce evidence of any illegal acquisition, alteration or distribution of the tape by Defendants, Summary Judgment would be appropriate.

▇▇ Assuming, however, that NAGE had produced sufficient evidence on these points, Summary Judgment would nonetheless be appropriate, because The Globe's use of the tape constituted a "fair use." 17 U.S.C. § 107 ("[T]he fair use of a copyrighted work ... for purposes such as ... news reporting ... is not an infringement of copyright."). Fair use is an equitable doctrine that grants others the privilege "to use copyrighted material in a reasonable manner without [the owner's] consent." *Haberman v. Hustler Magazine*, 626 F.Supp. 201, 207 (D.Mass.1986) (quoting *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) (citation omitted)). To determine fair use, courts consider the facts of each case in light of four, non-exhaustive statutory criteria: (1) purpose and character of the alleged infringer's use; (2) nature of the copyrighted work; (3) amount and substantiality of the copyrighted work used; and (4) effect on the potential market for, or value of, the copyrighted work. *See id.;* 17 U.S.C. § 107. Defendants contend that analyzing its use of the tape, in light of the four criteria, supports a fair-use finding.

▇▇ NAGE only addresses the first criteria, arguing that The Globe used the tape for a smear campaign, not for news reporting. But, NAGE produced insufficient evidence of any smear campaign. Furthermore, Rakowsky's alleged misinterpretation of Lyons' comments do not reveal "distortions ... so deliberate, and so misrepresentative of the original work" to show bad faith use. *Maxtone–Graham v. Burtchaell*, 803 F.2d 1253, 1261 (2d Cir. 1986).

Courts construe fair use protection broadly when the copyrighted material is more informational than entertaining in nature, and when it has already been released to the public. *See Harper & Row, Publishers, Inc.*, 471 U.S. at 563–64, 105 S.Ct. 2218. Here, Lyons' comments were informational, and the talk show already had aired. Moreover, using a relatively small and qualitatively insubstantial portion of the copyrighted work favors a fair-use finding. *See Rubin v. Brooks/Cole Pub. Co.*, 836 F.Supp. 909, 920 (D.Mass. 1993). The Globe article only quoted three sentences from four pages of Lyons' transcribed introductory remarks.

Market effect is "undoubtedly the single most important factor of fair use." *Harper & Row, Publishers, Inc.*, 471 U.S. at 566, 105 S.Ct. 2218. NAGE points to no evidence that either The Globe's use of the quotes, or the alleged distribution of the tape to television stations, negatively impacted the potential market for, or the value of, the copyrighted program. Furthermore, any negative impact must result from the alleged act of copyright infringement, not merely from a disparaging remark. *See New Era Publications Intern. ApS v. Carol Pub.Group*, 904 F.2d 152, 160 (2d Cir.1990), *cert. denied*, 498 U.S. 921, 111 S.Ct. 297, 112 L.Ed.2d 251 (1990).

NAGE's Count I-copyright infringement claim rests on unsupported allegations. Additionally, The Globe's use of the Challenge program constituted a fair use. Defendants' Motion for Summary Judgment

on Count I, therefore, is ALLOWED.[2]

### B. Count III—Defamation

▆▆▆▆ Lyons concedes that he "thrust himself into the forefront of a particular public controversy in order to influence the resolution of the issues involved," making him a public figure plaintiff. *Pendleton v. City of Haverhill*, 156 F.3d 57, 67 (1st Cir.1998). A public figure plaintiff suing a media defendant for Defamation must prove (1) by a preponderance of the evidence that the defendant published a defamatory, provably-false factual assertion concerning the plaintiff, *see Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 727 (1st Cir.1992), and (2) with clear and convincing evidence that the defendant published the offending statements with actual malice, *see Anderson v. Liberty Lobby*, 477 U.S. at 255–56, 106 S.Ct. 2505.

▆▆▆▆ Lyons contends that Rakowsky and The Globe conflated two quotes that referred to his criticism of the settlement offer and of The Globe into a statement that impliedly labeled him as an Anti–Semite. Lyons further contends that, in retaliation for his criticism, Rakowsky and The Globe intentionally used these two quotes out of context and recklessly disregarded the true meaning of his comments. A contextual reading of the article, however, demonstrates that the Globe did not publish a provably-false factual assertion with actual malice.

#### 1. *Provably–False Factual Assertion*

Though generally a mixed question of law and fact, Summary Judgment is proper when a media defendant's offending statement cannot be reasonably construed as a provably-false factual assertion. *See Lyons v. Globe*, 415 Mass. 258, 612 N.E.2d 1158, 1162–64 (1993). While certain defamatory opinions may be actionable,

statements about a public official's motive are constitutionally protected. *See King v. Globe*, 400 Mass. 705, 512 N.E.2d 241, 244, 248 (1987). Massachusetts law protects an opinion, framed as a factual assertion, that discloses or implies its non-defamatory factual basis. *See National Ass'n of Government Employees, Inc. v. Central Broadcasting Corp.*, 379 Mass. 220, 396 N.E.2d 996, 1000–01 (1979). To distinguish a provably-false factual assertion from a protected opinion, a court must analyze the offending statement in context, taking into account the medium of expression and any cautionary or subjective words utilized by the writer. *See Lyons*, 612 N.E.2d at 1162. A practical test is whether the readers are told the facts so that they can make up their own minds. *See National Ass'n of Government Employees*, 379 Mass. 220, 396 N.E.2d at 1000.

Lyons argues that The Globe article factually labeled him an Anti–Semite by linking the phrase "tinged with charges of Anti–Semitism" with Rakowsky's assertion that "Lyons ... suggested that [the settlement] grew out of a Jewish mayor's efforts to funnel taxpayer money to a Jewish constituent." Lyons concludes that the defamatory label left the reader to assume that The Globe had proof of Lyons' Anti–Semitism, yet did not reveal that factual basis in the article.

Viewed in totality, however, the article adequately cautioned the reader of a heated debate and disclosed the factual basis for Rakowsky's subjective interpretation of a public figure's motives. First, the article alerted the reader to the hotly contested issue. The use of the introductory phrase "increasingly ugly dispute tinged with charges of Anti–Semitism" warned the readers that statements from both sides should be interpreted with caution. Moreover, that phrase did not refer to Lyons, but to those who characterized the Chal-

---

**2.** Though the jurisdiction-conferring claim has been dismissed, the court retains jurisdiction over the supplemental state claims (Counts III and V) in accordance with 28

U.S.C. § 1367(c). *See Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995).

lenge program as Anti–Semitic, such as Altman's lawyer, quoted later in the article. Second, the word "suggested" cautioned the readers that Rakowsky's subjective interpretation of Lyons' motivation for opposing the settlement, not a factual assertion, would follow. Third, the interpretation of another's motive does not reasonably lend itself to objective proof or disproof, *see National Ass'n of Government Employees*, 379 Mass. 220, 396 N.E.2d at 1000–02 (holding that the label communism was too vague and open to various interpretations to qualify as a provably-false assertion), aside from the fact that "the First Amendment protects as opinion discussion about the motives of public officials," *King*, 512 N.E.2d at 247–48.

▮ Finally, Massachusetts common law protects defamatory opinions based on disclosed facts, even if the opinion is communicated as a factual statement. *See Lyons*, 612 N.E.2d at 1164 ("Our cases protect expressions of opinion based on disclosed information because we trust that the recipient of such opinions will reject ideas which he or she finds unwarranted by the disclosed information."). The characterization of the dispute as "tinged with charges of Anti–Semitism" relied upon the disclosed quote of Altman's lawyer, who called the Challenge program "one of the most Anti–Semitic" that he had ever seen. And, Lyons' quotes stating that Cohen wanted to "take care" of Altman, and hypothesizing how The Globe's coverage would have changed if Altman and Cohen had Irish-sounding surnames, provided sufficient factual basis for the opinion "[L]yons ... suggested the deal arose from a Jewish mayor's attempt to funnel money to a Jewish resident." In sum, the article allowed the readers to make up their minds concerning Rakowsky's subjective interpretation of Lyons' motives.

### 2. Actual Malice

Even if Lyons could show that the offending innuendo amounted to a provably-false factual assertion, he cannot produce clear and convincing evidence that Rakowsky wrote the article with the "mordant unconcern with the truth" required to show actual malice. *National Ass'n of Government Employees*, 396 N.E.2d at 1003. Reasonable inferences drawn from objective evidence usually are the only means to proving actual malice, given that most defendants in libel suits do not acknowledge the deliberate falsity of their statements. *See Stone v. Essex County Newspapers, Inc.*, 367 Mass. 849, 330 N.E.2d 161, 173 (1975). But, the evidence and rational inferences still must show that "the defendant in fact entertained serious doubts as to the truth of the publication." *Id.* (quoting *St. Amant v. Thompson*, 390 U.S. 727, 730–31, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)).

Lyons argues that his comments clearly indicated that he criticized the settlement offer and The Globe because he is "anti-deal-making and anti-biased reporting," (Pls.' Opp'n Br. at 14), and alleges that the Globe knowingly distorted the true meaning of his comments. Lyons argues that this distortion, in addition to Defendants' alleged partiality towards Altman, demonstrates sufficient evidence of actual malice to overcome Summary Judgment. This court disagrees.

First, Rakowsky chose a rational interpretation of Lyons' ambiguous comments—that Lyons opposed the settlement because he suspected that it stemmed from ethnic favoritism. The deliberate choice of one among many rational interpretations of an ambiguous statement does not create a jury question of actual malice. *See Time, Inc. v. Pape*, 401 U.S. 279, 290–92, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971). Second, Lyons' "retaliation" evidence fails to show actual malice. *See Loeb v. Globe*, 489 F.Supp. 481, 486–87 (D.Mass.1980) ("[B]ad motive or hostility does not meet the *New York Times* standard of reckless disregard for the truth.").

Because Lyons fails to produce any evidence that the offending statements amounted to an actionable assertion and that The Globe published the article with actual malice, Defendants' Motion for Summary Judgment on Count III is ALLOWED.

### C. Count V–False Light Invasion of Privacy

Defendants argue that Massachusetts law does not recognize false light invasion of privacy as a cause of action distinct from defamation. *See ELM Medical Laboratory, Inc. v. RKO General, Inc.*, 403 Mass. 779, 532 N.E.2d 675, 681 (1989); *Brown v. Hearst Corp.*, 54 F.3d 21, 27 (1st Cir.1995). Plaintiff concedes this point, and Defendants' Motion for Summary Judgment on Count V is ALLOWED.

### Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment on Counts I, III and V is ALLOWED.