The PROVISIONAL GOVERNMENT OF the REPUBLIC OF NEW AFRIKA, et al., Plaintiffs,

v.

AMERICAN BROADCASTING COMPANIES, INC., et al., Defendants.

Civ. A. No. 84–1231.

United States District Court, District of Columbia.

April 12, 1985.

Milele Archibald, Washington, D.C., for plaintiffs.

Michael J. Calvey, Mark D. Herlach, Washington, D.C., for defendants.

## MEMORANDUM ORDER

BARRINGTON D. PARKER, District. Judge.

This matter comes before the Court on the motion to dismiss the complaint against all defendants for failure to state a claim upon which relief may be granted. In addition, the motion seeks dismissal of the complaint against several defendants for insufficient service of process.

The plaintiffs are the Provisional Government of the Republic of New Afrika ("Provisional Government" or "Republic") and its co-presidents, Imari Abubakari Obadele and Dara Abubakari. They allege that the Provisional Government represents the "elected group of persons exercising sovereignty for that portion of the New Afrikan nation in North America which seeks independence and that portion which would choose independence if they were apprised of their right to an independent nation-state and knew of the struggle to win independence...." Complaint at ¶ 2. The defendants American Broadcasting Companies, Inc. ("ABC"), two of its unincorporated divisions, WJLA–TV, Inc. ("WJLA") and several individuals[1] are charged with defaming the Provisional Government during news broadcasts and deliberately excluding references to activities surrounding its "campaign for independence." The defendants are collectively referred to as ABC, where appropriate.

The complaint is based in large part on defamation claims, in addition to alleged violations of the First and Thirteenth Amendments, and invasion of rights protected by 42 U.S.C. §§ 1981 and 1985(3). For the reasons stated below, the Court determines that the complaint should be dismissed as to all claims other than allegations of common law defamation against defendants ABC and WJLA arising from a television news broadcast on April 20, 1983. Accordingly, the defendants' motion is granted in part and denied in part.

## FACTUAL BACKGROUND

The plaintiffs filed this action on April 19, 1984. The major focus of the complaint

---

1. The unincorporated divisions of ABC are known as American Broadcasting Company Television and American Broadcasting Company News. The individual defendants are Frederick. Pierce (President of ABC), Sam Antar (Vice-president and Director of Legal and Business Affairs, ABC News), Hilary Brown (ABC correspondent), and Thomas Cookerly (President of WJLA).

is the charge that on or about April 20 or 21, 1983, ABC broadcast a news story which associated the Provisional Government with the 1981 Brinks robbery, and thus linked it "to a pattern of criminality and terrorism." Complaint at ¶ 4. The plaintiffs now apparently conclude that the broadcast occurred on April 20, 1983. Opposition to Motion to Dismiss at 1, 8, filed June 25, 1984. ABC agrees that on that date its reporter, Ms. Hilary Brown, commented on the Brinks robbery on a broadcast of "World News Tonight". A transcript of the broadcast is attached as Ex. A to the Affidavit of Donald Martin, filed May 29, 1984 ("Transcript"). The complaint also states that ABC has at other times defamed the Provisional Government, including but not limited to October and November of 1981. The substance of these alleged defamations is not specified in the complaint.

The plaintiffs have since clarified the nature of defamatory allegations concerning the April 20 broadcast. They concede that although the April 20 broadcast did not refer to the Provisional Government by name, the defamation was accomplished by a combination of "words and [ ] graphic illustration." *Id.* Opposition at 8. They assert that the broadcast pictured a streamer with the name "Republic of New Africa" at the same time Ms. Brown, in referring to the Brinks robbery, stated

> that because of one vicious bungled crime a year and a half ago, some of the most radical, most violent protest groups of the '60's are being brought to trial as common criminals.

*Id.* at 9; Transcript at 9–10. The defendants disagree with this characterization of the timing of the appearance of the streamer. ABC states that the streamer flashed across the screen earlier in the broadcast, when Ms. Brown stated that:

> [t]he Brinks holdup came to be seen by the FBI as part of a complex pattern of racketeering involving a very mixed bag of people who differed widely in background and political affiliation and whose activities range from running drugs and prostitution rings to preaching revolution and radical feminism.

Defendants' Reply at 2; Transcript at 9. The parties have not stated whether any members of the Provisional Government were in fact defendants in the Brinks trial.

## LEGAL ANALYSIS

The defendants invoke a number of grounds for dismissal of the complaint. Their arguments are premised on the plaintiffs' alleged failure to effect service of process on all defendants save ABC, the statute of limitations, the sufficiency of the defamatory allegations, the protection of the First Amendment, and the adequacy of the claims stated under the Thirteenth Amendment and sections 1981 and 1985(3). These allegations are discussed in turn.

### Service of Process

■ The defendants have filed an affidavit which states that neither WJLA, the unincorporated divisions of ABC, nor the individual defendants were properly served. Affidavit of Jerry Dawson at ¶ 8, filed May 29, 1984. They have moved to dismiss the complaint against these entities pursuant to Fed.R.Civ.P. 12(b)(4). The plaintiffs admit that the individual defendants and the ABC divisions have not been served, but contend that on June 11, 1984, WJLA was served through its registered agent, the CT Corporation System. Affidavit of Belal Shabazz, filed June 29, 1984; Plaintiffs' Opposition at 23. Dawson states that the CT Corporation System is in fact the registered agent for WJLA. Dawson Aff. at ¶ 5. In view of these uncontested assertions, the Court dismisses this action with respect to the individual defendants and the ABC divisions. The Court denies the motion without prejudice as to WJLA. An evidentiary hearing may be held if WJLA intends to further pursue this defense.

### Statute of Limitations and the Sufficiency of the Defamatory Allegations

■ The Court dismisses any defamation allegations based on events which occurred prior to April 19, 1983, one year before the

complaint was filed. These allegations are barred by the relevant statute of limitations. D.C.Code § 12–301(4).

■ The defendants also raise several challenges to the sufficiency of the plaintiffs' remaining defamatory allegations. They argue that the complaint fails to state a cause of action based on ABC's coverage of the plaintiffs' activities, does not allege the substance of any defamatory statements, and is not defamatory with respect to the Provisional Government's officials. The Court agrees that the complaint is deficient in all of these respects, but will permit the plaintiffs to file an amended complaint which succinctly states the substance of the defamation alleged in the April 20 broadcast. However, the complaint is dismissed as to the claims concerning the adequacy of ABC's media coverage and the claims of the individual plaintiffs.

■ The plaintiffs criticize ABC's media coverage on the grounds that it has not adequately publicized the Provisional Government's activities or its relationship with the United States government. This claim is not premised on the content of ABC's coverage of the plaintiffs, but rather on the alleged lack of coverage. To the extent that this claim is premised on the United States Constitution, the Court is unaware of any constitutional doctrine which imposes an affirmative duty on the media to report about the activities of any individual. To the extent the complaint is rooted in the fairness doctrine,[2] which has been given statutory recognition in the Federal Communications Act of 1935, 47 U.S.C. § 315(a), it must fail because the statute does not provide a private right of action for damages. *Daly v. CBS, Inc.,* 309 F.2d 83, 86 (7th Cir.1962).

■ Moreover, neither the complaint nor the transcript of the broadcast affords any basis for finding that the Provisional Government's officials have been defamed. Defamation is personal; a plaintiff who alleges defamation "must show that [the statement] was published 'of and concerning' him." *Summerlin v. Washington Star,* 7 Media L.Rep. 2460, 2461 (D.D.C. 1981). Allegations of defamation by an organization and its members are not interchangeable. Statements which refer to individual members of an organization do not implicate the organization. *Church of Scientology of California v. Flynn,* 578 F.Supp. 266, 269 (D.Mass.1984). By the same reasoning, statements which refer to an organization do not implicate its members.

■ This conclusion is reinforced by the limitations the concept of group libel imposes on actions for defamation. A defamatory statement directed against a group or class does not generally give rise to a cause of action on behalf of its individual members. *Fowler v. Curtis Publishing Co.,* 182 F.2d 377, 378 (D.C.Cir.1950). In order to be actionable by an individual, the publication must contain "statements that are reasonably susceptible of application" to the individual. *Gintert v. Howard Publications, Inc.,* 565 F.Supp. 829, 835 (N.D.Ind.1983). Here, the statements in the April 20 broadcast contain no explicit references to the officers of the Provisional Government, and the surrounding circumstances do not implicate them in any fashion. Thus, the complaint must be dismissed as to plaintiffs' Obadele and Abubakari, suing on their own behalf.

The Court also agrees that the complaint, as filed, is inadequate because it is "devoid of specific defamatory comments." *See Leo Winter Associates, Inc. v. HHS,* 497 F.Supp. 429, 432 (D.D.C.1980). Rather than dismissing the complaint, however, the Court will permit the Provisional Government to specifically set forth the

---

**2.** According to this Circuit, the fairness doctrine ensures that:

the public is not to be confined to hearing only the views approved by [the broadcast press], but is entitled to be informed of the diversity of opinion in the land....

*NBC v. FCC,* 516 F.2d 1101, 1111 (D.C.Cir.1974), *cert. denied,* 424 U.S. 910, 96 S.Ct. 1105, 47 L.Ed.2d 313 (1976).

alleged defamatory statements and relevant circumstances. This description shall include a precise statement of the point at which the Republic of New Afrika streamer appeared on the broadcast.

### Thirteenth Amendment and Sections 1981 and 1985(3)

■ The Thirteenth Amendment is an "absolute declaration that slavery or involuntary servitude shall not exist in any part of the United States." *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 438, 88 S.Ct. 2186, 2202, 20 L.Ed.2d 1189 (1968) (citing *Civil Rights Cases,* 109 U.S. 3, 20, 3 S.Ct. 18, 27, 27 L.Ed. 835 (1883) ). Although the Supreme Court has never decided whether the Thirteenth Amendment provides a direct cause of action to eradicate the vestiges of slavery, the better view is that the Thirteenth Amendment, standing alone, does not give such rights. *Alma Society, Inc. v. Mellon,* 601 F.2d 1225, 1236–38 (2d Cir.), *cert. denied,* 444 U.S. 995, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979). Congress, of course, is empowered to pass laws to eradicate the badges and incidents of slavery. *Palmer v. Thompson,* 403 U.S. 217, 227, 91 S.Ct. 1940, 1946, 29 L.Ed.2d 438 (1971). It is to this question that we now turn.

■ Both of the statutory sections on which plaintiffs rely, 42 U.S.C. §§ 1981 and 1985(3), were passed pursuant to the Thirteenth Amendment. *Runyon v. McCrary,* 427 U.S. 160, 170–71, 96 S.Ct. 2586, 2594–95, 49 L.Ed.2d 415 (1976) (section 1981); *Griffin v. Breckenridge,* 403 U.S. 88, 105, 91 S.Ct. 1790, 1799, 29 L.Ed.2d 338 (1971) (section 1985(3)). Section 1981 provides in relevant part that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

■ The two major clauses—the contracts clause and the equal benefits clause—are intended to enforce two distinct sets of rights. *Mahone v. Waddle,*

564 F.2d 1018, 1029 (3d Cir.1977), *cert. denied,* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978).

■ The specific assertions in plaintiffs' complaint show that their claims arise under the equal benefits clause. Complaint at ¶ 15. Because this clause does not reach purely private discrimination, the element of state action must be alleged and proved. *Mahone,* 564 F.2d at 1029. Here, the plaintiffs' vague allegations of state action rest on the fact that the federal government regulates the broadcasting industry. The fact that the government has granted NBC a broadcast license is not sufficient to constitute state action, *see CBS v. DNC,* 412 U.S. 94, 119–121, 93 S.Ct. 2080, 2094–2096, 36 L.Ed.2d 772 (1973), and the plaintiffs' claim under § 1981 must be dismissed.

■ The plaintiffs' claims under section 1985(3) are also inadequate in the absence of the requisite element of state action. Section 1985(3) protects persons injured by conspiracies formed

> for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws....

The Provisional Government asserts a conspiracy to infringe its First Amendment rights, alleging that the defendants have conspired "to defame plaintiffs because of plaintiffs' race, New Afrikan nationality, and political beliefs...." Complaint at ¶ 14. In order to support this claim, the plaintiffs must prove

> that the state is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the state.

*United Brotherhood of Carpenters and Joiners of America, Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 3356–57, 77 L.Ed.2d 1049 (1983). Once again, the government's role in regulating the broadcasting industry is too minimal to constitute state action, and the plaintiffs' claim under section 1985(3) must be dismissed.

## Absolute Privilege

█ Lastly, the defendants assert that the plaintiffs' common law defamation claims should be dismissed because impersonal criticisms of government are absolutely privileged. The defendants correctly state that *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), stands for the proposition that the Constitution forbids the government from prosecuting its citizens for libel. *See Rosenblatt v. Baer,* 383 U.S. 75, 81, 86 S.Ct. 669, 673, 15 L.Ed.2d 597 (1966) (citing *Sullivan,* 376 U.S. at 273–276, 290–92, 84 S.Ct. at 722–724, 731–33). *Sullivan,* however, is inapposite to nontraditional governments such as the Republic of New Africa.

█ The privilege afforded to commentary on matters of public importance is grounded in

a profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government....

*Sullivan,* 376 U.S. at 270, 84 S.Ct. at 720. The same philosophy undergirds the court's attack on the Sedition Act and other attempts to silence critics of government. Since a state could not constitutionally impose criminal penalties on good-faith critics of government operations, such a result "is likewise beyond the reach of its civil law of libel." *Id.* at 277, 84 S.Ct. at 724. The absolute protection afforded attacks on government, as distinguished from attacks on government officials, are grounded in a fear that the government will utilize all of its power and resources to stifle public debate, and thus jeopardize the very tenets of a democratic society.

█ The Provisional Government is not a government in the traditional sense. Indeed, if it is a government at all, it bears no resemblance to federal or state government. Since the Provisional Government exercises no sovereignty over ABC or any of the other defendants, this libel suit threatens democracy no more than a libel suit filed by any kind of political organiza-

tion. While it is likely that the Provisional Government may have to prove actual malice in order to ultimately prevail in this lawsuit, *id.* at 283, 84 S.Ct. at 727, that question is not now before the Court. The Court holds only that defamatory statements about the Provisional Government are not absolutely protected by the First Amendment.

## CONCLUSION

The complaint survives the motion to dismiss solely with respect to the plaintiff Provisional Government's claim that it was defamed by the broadcast of April 20, 1983. The remaining allegations of the complaint asserting claims under the Thirteenth Amendment and 42 U.S.C. §§ 1981 and 1985(3) fail to state a cause of action.

On the basis of the above, it is this 12th day of April, 1985,

## ORDERED

That the plaintiffs' claims under the Thirteenth Amendment and 42 U.S.C. §§ 1981 and 1985(3) are dismissed with prejudice for failure to state a cause of action.

That the complaint is dismissed as to plaintiffs Obadele and Abubakari, and defendants American Broadcasting Company Television, American Broadcasting Company News, Pierce, Antar, Brown and Cookerly.

That the plaintiff Provisional Government is granted leave to file an amended complaint consistent with the above ruling. The filing and service of the amended complaint on the two remaining defendants, ABC and WJLA, shall be completed by May 3, 1985.

That a status call will be held in this proceeding on May 9, 1985 at 9:00 o'clock a.m. for purposes of entering a scheduling order. Trial counsel for the parties are required to be present.