Alice F.W. ALEXIS, et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA,
et al., Defendants.

No. Civ.A. 98–151(RMU).

United States District Court,
District of Columbia.

Sept. 29, 1999.

Marion E. Baurley, Vanessa Santos, Marion E. Baurley, P.C., Washington, D.C., for plaintiffs Alice Alexis, Anna–Marie Brannic, Constance Graham, Mohammed Hmaey, Deloras James, Hermena Kinard, and Negussie Timikate.

Jack M. Simmons III, Asst. Corp. Counsel, D.C., Washington, D.C., for defendant District of Columbia.

Mary E. Pivec, Timothy E. Deahunt, Proskauer Rose LLP, Washington, D.C., for defendants Anthony A. Williams and Deloras Shepherd.

Stephen Taylor, General Counsel, Office of the Chief Financial Officer, Washington, D.C., for In–House counsel for the Office of the CFO of the District of Columbia.

## MEMORANDUM OPINION

URBINA, District Judge.

### Granting Defendant Anthony Williams's Motion for Dismissal on the Ground of Qualified Immunity

### I. INTRODUCTION

This matter comes before the court on a motion to dismiss filed by defendant Anthony Williams, who is sued due to events and statements arising out of his tenure as the Chief Financial Officer ("CFO") of the District of Columbia. The plaintiffs, nine former District of Columbia government employees, brought this consolidated action asserting claims under the United States Constitution, federal law and District of Columbia law arising out of their termination. Following this court's decisions in favor of the defendants on previous dispositive motions,[1] only one claim

---

1. On March 30, 1999 this court denied the defendant's motion for summary judgment on this claim. On June 15, 1999 this court denied the defendants' motion to reconsider that

survives: the plaintiffs' claim that Mr. Williams's[2] derogatory comments at a press conference violated their Fifth Amendment liberty interest in their reputation, i.e., their interest in not being defamed. Moreover, the claim survives only as to four of the original eight plaintiffs, Ms. Alexis, Ms. Graham, Ms. James and Ms. Kinard.[3]

Mr. Williams moves to dismiss the complaint on the ground that he is entitled to qualified immunity for the statements in question.[4] For the reasons which follow, the court will grant Mr. Williams's motion.

## II.  BACKGROUND

The factual background and procedural history of this case are set forth in this court's Memorandum Opinions issued on March 30, 1999 and June 15, 1999. On September 9, 1999 plaintiffs' counsel and Mr. Williams's counsel contacted chambers by telephone and informed the court that Mr. Williams refused to respond to interrogatories and document-production requests and refused to be deposed as a party in this matter. Mr. Williams stated that he is entitled to qualified immunity which shields him not only from liability but also from discovery.

By order dated September 10, 1999, this court granted Mr. Williams's motion to stay all discovery directed at him pending

ruling. The defendants filed an interlocutory appeal to the U.S. Court of Appeals for the D.C. Circuit on August 5, 1999.

2.  The plaintiffs also seek to impose liability on the District of Columbia for Mr. Williams's remarks. The plaintiffs also named Deloras Shepherd, former CFO of the District's Department of the Treasury, as a party defendant, but all claims applicable to her have been previously dismissed from this case.

3.  This means that four plaintiffs are no longer in this case: Ms. Brannic, Mr. Hmaey, Ms. Thomas and Mr. Timikate.

4.  The plaintiffs assert that Mr. Williams waived the immunity defense by failing to plead it specifically. This is inaccurate. Mr. Williams raised the qualified immunity defense in his May 1998 answer to former plain-

resolution of the instant motion to dismiss. Discovery continues, however, as to the four remaining plaintiffs and the defendant District of Columbia.

## III.  LEGAL STANDARD

### A.  Motion to Dismiss

A motion to dismiss for failure to state a claim upon which relief can be granted tests not whether the plaintiff will prevail on the merits, but instead whether or not he has properly stated a claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Fed. R.Civ.P. 12(b)(6). The court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Atchinson v. D.C.,* 73 F.3d 418, 421 (D.C.Cir.1996). In deciding such a motion, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *See Maljack Prods. v. Motion Picture Ass'n,* 52 F.3d 373, 375 (D.C.Cir.1995). The court need not, however, accept as true the plaintiff's legal conclusions. *See Taylor v. F.D.I.C.,* 132 F.3d 753, 762 (D.C.Cir.1997).

tiff Jasper Mills's complaint (before the individual plaintiffs' complaints were replaced by a consolidated complaint) and also in his June 1999 answer to the plaintiffs' consolidated amended complaint.

The plaintiffs also complain that Mr. Williams never sought leave of court to file a motion to dismiss based on immunity. The plaintiffs appear to argue that because Mr. Williams did not move for dismissal on this ground in the motions he filed earlier this year, he may not do so now. This argument lacks merit. Page 5 of this court's Scheduling & Procedures Order of June 15, 1999 specifically states, "Dispositive motions *on grounds not previously advanced before and decided by the court* are due on or before Tuesday, November 23, 1999 . . . ."

## B. A Government Official's Entitlement to Qualified Immunity

### 1. *Objective Test*

■ "Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The test is not whether the particular official actually knew that his conduct violated clearly established rights or intended to violate such rights under the *Harlow* standard, "a defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated. Evidence concerning the defendant's subjective intent is simply irrelevant to that defense." *Crawford–El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 1592, 140 L.Ed.2d 759 (1998); *see also ACLU v. Barr,* 952 F.2d 457, 468 (D.C.Cir.1991) ("bare allegations of improper purpose do not suffice to drag officials into the mire of discovery" from which qualified immunity shields them). Rather, the qualified-immunity test is objective: would a reasonable person in the official's position have known his conduct to be unlawful in light of "clearly established" law and the information he possessed?[5] *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). If the court answers this question in the negative, the official is entitled to qualified immunity and the complaint must be dismissed as to the official. *See, e.g., Watkins v. Arlington Cty.,* 1997 WL 404878, *2 (D.C.Cir. 1997) (police entitled to immunity and summary judgment where affidavits established that actions complained of "did not violate any clearly established constitution-

al right or constitute objectively unreasonable behavior under the circumstances").

■ To determine whether immunity applies, the court must determine "whether, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law." *Crawford–El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 1597, 140 L.Ed.2d 759 (1998). If the official's entitlement to immunity can be proved based on the pleadings, the official will be dismissed prior to discovery. *Id.*

### 2. *What Constitutes a "Clearly Established" Right?*

■ For purposes of qualified immunity, a right is "clearly established" if "the contours of that right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 1699, 143 L.Ed.2d 818 (1999); *see also Farmer v. Moritsugu,* 163 F.3d 610, 613 (D.C.Cir.1998). The "clearly established right" requirement protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *see, e.g., Garcia v. District of Columbia,* 56 F.Supp.2d 1, 14 (D.D.C.1998) (no immunity, because "any reasonable correctional officer must know that retaliation for the filing of a grievance would violate the inmate's constitutional rights").

In short, the doctrine "gives ample room for mistaken judgments" by government officials acting in the discharge of their duties. *Id.; see, e.g., Harris v. D.C.,* 932 F.2d 10 (D.C.Cir.1991) (police had no clearly established obligation to obtain medical care for drug overdose victim who died in custody). In *Kroll v. United States Capitol Police,* 847 F.2d 899 (D.C.Cir. 1988), for example, Michael Kroll attended

5.   The plaintiffs assert, "in order to determine whether an official can be shielded by immunity, an inquiry must be made into that official's knowledge and information regarding the alleged violated right." *See* Opp. to Mot.

to Dis. at 6 n. 3. This is incorrect because it focuses on Mr. Williams's actual knowledge of the law instead of what a reasonable official in his position *should* have known.

a ceremony held to welcome an Olympic Team. Mr. Kroll brought a sign protecting U.S. policy. Capitol Police arrested Mr. Kroll because they thought a U.S. Senate Resolution concerning the ceremony required permits for people who were protesting but not for others. This court held the police were entitled to immunity, without deciding whether they had in fact violated Mr. Kroll's First Amendment rights. *Id.* at 900–901. The Court of Appeals affirmed. Judge Robinson concurred, even though he suggested the policemen's interpretation of the Resolution was quite wrong. The Judge emphasized, "Of decisional importance is not what Senate Resolution 342 did or did not do, but what the involved policemen reasonably thought in that regard." *Id.* at 906 (Robinson, J., concurring in judgment).

### 3. *Scope of Qualified Immunity*

Where qualified immunity applies, it provides not simply a defense to liability, but also "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the purely legal question whether the conduct ... violated clearly established law." *Farmer v. Moritsugu*, 163 F.3d 610, 613 (D.C.Cir. 1998) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). One purpose "of the ... qualified immunity standard is to protect public officials from the 'broad-ranging discovery' that can be 'particularly disruptive of effective government.' " *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

## IV. LEGAL ANALYSIS

### A. The "Right" Which Must Have Been "Clearly Established"

The plaintiffs contend that qualified immunity does not apply, because Mr. Williams "clearly knew that defaming a persons [sic] character and infringing on their Fifth Amendment liberty interest was a violation of their rights from which he could not be immune." *See* Opp. to Mot. to Dis. at 6. This formulation mischaracterizes the issue. Surely a reasonable official should have known the employees had a clearly established right not to be defamed. But this begs the question whether he should have known. that criticizing a large group of employees, without naming or singling out any one in particular, violated some clearly established right.

In other words, the plaintiffs frame too broadly the "right" which must have been "clearly established." The issue is not whether they had some *generalized* liberty interest in not being defamed. Framing the right so abstractly would divorce the immunity analysis from the circumstances in which the official's conduct occurred. The court is obliged to consider those circumstances, because the immunity inquiry is "fact-specific." *See Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987) ("The relevant question ... is the objective (*albeit fact-specific*) question whether a reasonable officer could have believed" a warrantless search to be lawful under the circumstances there presented) (emphasis added).

Thus, in determining whether an official has immunity, the court must *specifically* define the allegedly violated right with reference to the context in which the official's conduct occurred. The Supreme Court has explained the rationale for this standard:

> For example, the right to due process of law is clearly established by the Due Process Clause, and thus there is a sense in which any action that violates the Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said about any other constitutional or statutory violation. *But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of Harlow [v. Fitzgerald, 457 U.S. 800, 102*

*S.Ct. 2727, 73 L.Ed.2d 396 (1982) ]. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified immunity simply by alleging violation of extremely abstract rights.*

*Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). For the court to deny a properly supported immunity defense, there must be controlling case law clearly holding that an official who acted equivalently to the defendant violated the right of someone similarly situated to the plaintiff. *See Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 1699–1701, 143 L.Ed.2d 818 (1999). "This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful ... but it is to say that in the light of preexisting law the unlawfulness must be apparent." *O'Donnell v. Barry,* 148 F.3d 1126, 1142 (D.C.Cir.1998) (quoting *Anderson,* 483 U.S. at 639–40, 107 S.Ct. 3034).

Accordingly, the court inquires whether pre–1997 D.C. Circuit law "clearly established" *a right not to be criticized as an unnamed member of a large group.* For the reasons which follow, the court concludes that right was not "clearly established" under the circumstances here.

**B. Group Defamation: When an Unnamed Member of a Group Has a "Clearly Established" Right Not to Have the Group Disparaged**

■ Defamation is personal; a plaintiff who alleges defamation "must show that [the allegedly defamatory] statement was published 'of and concerning' him" *Summerlin v. Washington Star,* 7 Media L.Rep. 2460, 2461 (D.D.C.1981). Allegations of defamation by an organization or group and its members are not interchangeable. Statements which refer to an organization or group do not necessarily implicate its members. *See Provisional Government v. ABC,* 609 F.Supp. 104, 108

(D.D.C.1985). For this reason, "a defamatory statement directed at a group or class does not generally give rise to a cause of action on behalf of its individual members." *Id.* (citing *Fowler v. Curtis Pub. Co.,* 182 F.2d 377, 378 (D.C.Cir.1950)); *accord Church of Scientology v. Time Warner, Inc.,* 806 F.Supp. 1157, 1160 (S.D.N.Y. 1992) ("Under the group libel doctrine, a plaintiff's claim is insufficient if the allegedly defamatory statement referenced the plaintiff solely as a member of a group"); Debra T. Landis, 52 A.L.R.4th 618 (1987, Sept. 1998 Supp.), § 3 (citing cases for view that "if defamatory language is used broadly concerning the members of a large class or group, absent other circumstances specifically pointing to a particular member, no member has a right of action for libel or slander."). This is the "group defamation" doctrine.

■ It has not been easy for group members to overcome the group defamation doctrine. To do so, a member of the derogated group must demonstrate either that "(a) the group or class is so small that the matter can reasonably be understood to refer to the member [hereinafter the "small-group exception"], or (b) the circumstances of publication reasonably give rise to the conclusion that there is *particular reference* to the member." *Restatement 2d of Torts* § 564A (emphasis added). In other words, in order to actionably defame an individual, a statement about a group "must contain some special application of the defamatory matter to the individual." *See AIDS Counseling & Testing Centers v. Group W Television, Inc.,* 903 F.2d 1000, 1005 (4th Cir.1990); *accord Arcand v. Evening Call Pub. Co.,* 567 F.2d 1163, 1164 (1st Cir.1977). Absent evidence that the statement about the group had some particular application to the unnamed individual, the individual's defamation claim will be dismissed. *See Provisional Gov't.,* 609 F.Supp. at 108 (citation omitted); *accord Weatherhead v. Globe Internat'l.,* 832 F.2d 1226, 1228–29 (10th Cir. 1987) (affirming dismissal of defamation

claims against newspaper which alleged that dog breeders raised dogs in inhumane conditions, "as the claimant group of 955 [breeders] was too large to afford relief" where they were not named); Wittenberg, "Individual Recovery for Defamation of a Group," 15 Ohio.St.L.J. 273, 273–79 (1954); Tanenhaus, "Group Libel," 35 Cornell L.Q. 261, 263 (1950); Wilner, "The Civil Liability Aspects of Defamation Directed Against a Collectivity," 90 U.Pa.L.Rev. 414 (1942).

As mentioned above, the rule that unnamed members of a disparaged group have no right to sue for defamation admits of an exception for smaller groups under certain circumstances: "Where the group or class [defamed] is small, and each and every member of the group or class is referred to, then any individual member can sue." *Neiman–Marcus v. Lait,* 13 F.R.D. 311, 315 (S.D.N.Y.1952) (citing, *inter alia, Fowler v. Curtis Pub. Co.,* 182 F.2d 377 (D.C.Cir.1950)). However, the small-group exception has been fairly narrowly construed. The courts traditionally have required quite a small group—no more than 20 or 30 members—before they will hold that defamation of the group should be deemed to have particular application to a group member who is not named in the defamatory remarks. *See, e.g., American Broadcasting–Paramount Theatres v. Simpson,* 106 Ga.App. 230, 126 S.E.2d 873, 883 (1962) (plaintiff was one of two prison guards defamed by TV broadcast); *Farrell v. Triangle Pubs.,* 399 Pa. 102, 159 A.2d 734, 736–37 (1960) (court allowed township commissioner to bring defamation suit against person who defamed group of 13 commissioners); *Marr v. Putnam,* 196 Or. 1, 246 P.2d 509, 520 (1952) (plaintiffs were the only two radio repairmen in town); *Lathrop v. Sundberg,* 55 Wash. 144, 104 P. 176, 178 (1909); *Wofford v. Meeks,* 129 Ala. 349, 30 So. 625, 628 (1901) (county commissioner permitted to sue for defamation directed at entire board of commissioners); *Hardy v. Williamson,* 86 Ga. 551, 12 S.E. 874, 876 (1891) (one of 11 engineers on construction project could sue for defamation directed at group); *El-*

*lis v. Kimball,* 33 Mass. 132, 135 (Mass. 1834) (plaintiff was a member of the defamed court-martial tribunal); *Ryer v. Fireman's Journal Co.,* 11 Daly 251, 253–54 (N.Y.Com.Pl.1882) (plaintiff was one of three harness-makers for the N.Y. Fire Department).

Conversely, when a group consists of more than about 25 people, the courts have traditionally found that defamation of the group does not constitute defamation of a particular group member who was neither named nor singled out in the remarks. *See Mullins v. Brando,* 13 Cal.App.3d 409, 91 Cal.Rptr. 796, 805 (1970) (police officers could not sue for actor's talk-show attack on town's police department). One Circuit Court of Appeals refused to allow an airline to sue for group defamation when the group consisted of 5 to 10 airlines. *See Golden North Airways v. Tanana Pub. Co.,* 218 F.2d 612, 618 (9th Cir.1954).

In short, the cases surveyed from other federal and state jurisdictions do not establish a "bright line" above which a defamed group is "too big" for an unnamed individual member to sue for defamation. The cases do evince a consistent rule of thumb, however, that unnamed group members generally are not permitted to sue for group defamation if the group has more than 25 members; they will almost invariably not be permitted to sue if the group has more than 100 members. As discussed below, these rules of thumb have been followed in this Circuit.

**C. The Plaintiffs' Argument that they Had a Clearly Established Right that the Group Not Be Defamed Because They Were "Identifiable," even though Unnamed**

**1. The Plaintiffs as Unnamed but "Identifiable"**

When Mr. Williams made his statements in 1997, case law in this Circuit did not "clearly establish" an unnamed individual's right not to have someone defame a large group to which he belongs. On the con-

trary, the cases established that such an individual generally does *not* have a right to sue for defamation of the group. Therefore, the plaintiffs take a different approach.

The plaintiffs do not deny that Mr. Williams did not identify any particular employee by name or by position. Nor do the plaintiffs allege that Mr. Williams directed his remarks solely or especially at certain terminated employees. Rather, the plaintiffs contend that they were nonetheless "named and identified" because when Mr. Williams held the press conference "at least some of the Plaintiffs were being escorted out of their office buildings" and the District posted a list of the 165 terminated employees "on the door of at least the 801 East building at St. Elizabeth's Hospital." *See* Opp. to Mot. to Dis. at 7. The plaintiffs do not specifically allege that the four plaintiffs left in this case were among those escorted out of the building.

The court has carefully considered the plaintiffs' argument but concludes that it is not sufficient to defeat Mr. Williams's claim of immunity. For one thing, the court has not found controlling precedents which made it "clear" what circumstances serve to render unnamed group members "identified." Furthermore, a qualified-immunity decision from the D.C. Circuit Court of Appeals shows it was far from "clear" that "identifiable" group members are entitled to sue for defamation of the group when they are not named. *See infra.*

■ If the plaintiffs' defamation claim were tried, their "unnamed but identifiable" argument *might* enable them to prevail on the principle that an unnamed individual has a right against derogation of the group when the remarks effectively identify him and in some way particularly pertain to him. Even that is not clear, however, because the plaintiffs have not alleged that Mr. Williams's remarks had any particular or special application to any individual employee. In any event, to defeat Mr.

Williams's claim of qualified immunity, the plaintiffs must do more than show that Mr. Williams's remarks violated their rights. The plaintiffs must show that the law of this Circuit in January 1997 "clearly established" an unnamed group member's right not to have the group derogated under circumstances similar to those here. The court cannot conclude that right was established, let alone "clearly" established, at the time of Mr. Williams's statements.

## 2. Pre–1997 Group–Defamation Precedents in the D.C. Circuit

Preliminarily, the Court of Appeals for the D.C. Circuit has declared, "In a case of a defamatory publication directed against a class, without in any way identifying my specific individual, no individual member of the group has any redress." *Fowler v. Curtis Pub. Co.,* 182 F.2d 377 (D.C.Cir. 1950). In *Service Parking Corp. v. Washington Times,* 92 F.2d 502 (D.C.Cir.1937), for example, a newspaper printed an article which referred to "chiseling" and a "racket" by parking-lot and garage owners in Washington, D.C. The article did not mention any parking lot or garage by name, but it charged that the lot owners were breaking the law and cheating their customers. A parking-lot owner sued, but the trial judge directed a verdict for the newspaper because (1) the article could not reasonably be said to concern more than downtown parking-lot owners as a class, (2) there was nothing to indicate that the article referred solely or especially to the plaintiff and (3) the class was not so small as to render defamation of the class essentially the same as defamation of the plaintiff. The Court of Appeals for the D.C. Circuit affirmed and agreed that the derogation of the plaintiff's class did not violate any right of the plaintiff. Significantly, the court noted that there were only 20 to 30 parking lots in downtown Washington, operated by a total of 10 to 12 owners. Nonetheless, the court held, the defamation claim was properly dismissed because there was no language in the article which

referred to some "ascertainable or ascertained" person. *See Service Parking*, 92 F.2d at 506.

*Service Parking* is at odds with the plaintiffs' position in two important respects. First, someone reading the newspaper article there readily could have found out the identities of the few parking-lot owners the article disparaged. Without undue effort, such a person then would have known exactly who had been disparaged in the article. Nonetheless, the Court of Appeals did not consider that enough to give an unnamed parking-lot owner a right to sue for defamation of the class. This suggests that the plaintiffs, who were not named in Mr. Williams's statements, do not gain the right to sue for defamation of the group merely because a listener could have gone on to find out who comprised the group. *Cf. Sommer v. Oak Brook Park Dist. Bd.*, 1996 WL 422152, *8 (N.D.Ill.1996) (press release, which stated that park district was "deeply troubled with the counsel, guidance and action taken by its executive director," held not to sufficiently identify the plaintiff in libel action). This undermines any argument that the plaintiffs should be deemed "named" because those hearing the statements could have learned, or did learn the identities of the group's 165 members.

■ *Service Parking* is also inconsistent with the plaintiffs' position in a second respect. The newspaper article there disparaged the class of downtown D.C. parking lot owners, which the court found consisted of only 10–12 such owners running 20–30 lots at the time. The trial court could have concluded that the owners, although unnamed, had the right to sue for defamation because the article's disparaging comments were directed at a small group and applied to every member of the group. As discussed above, that "small

group, all members targeted" situation is a recognized exception to the group-defamation rule. The trial court, however, came to the opposite conclusion, and the Court of Appeals agreed. The Court of Appeals clearly stated, "Nor is the downtown class so small, as shown by the appellant's evidence, as to cause defamation of it to defame the appellant." *Service Parking*, 92 F.2d at 506. The parking-lot owner's defamation claim was properly dismissed because "[t]he jury could not reasonably have concluded from the [owner]'s evidence that the article referred '*solely or especially*' to him.[6] Putting it otherwise, we think that the jury must have reasonably concluded that the article was 'published against a class or aggregate body of persons....'" *Id.* (emphasis added). The Court of Appeals explained the rationale for its narrow construction of the "small-group" exception:

> The rule thus stated by the courts and text writers represents, undoubtedly, what has been regarded as a sound compromise between the conflicting interests involved in [defamation] cases. On the one hand is the social interest in free ... discussion of matters of general concern, and on the other is the individual interest in reputation. The courts have chosen not to limit freedom of public discussion except to prevent harm occasioned by defamatory statements reasonably susceptible of special application to a given individual.

*Service Parking*, 92 F.2d at 505–506. From *Service Parking* one may infer that if an unnamed (but identifiable) individual has no right to sue when his group of 10–12 persons is defamed, *a fortiori* the plaintiffs had no such right when their group consisted of *165* people.

In fairness to the plaintiffs, the court has considered that *Service Parking* might be distinguished from the instant case on

---

**6.** *Cf. In re Houbigant, Inc.*, 1996 WL 527334, *5 (S.D.N.Y.1996) (noting that "there is nothing in the [allegedly defamatory] notice itself to suggest that Atlantis [a company] was being specifically targeted as opposed to any

other distributor or retailer of Houbigant products," and court would have dismissed defamation claim were it not for other circumstances tending to show that the defamatory notice singled out a particular company).

the ground that the plaintiffs here are "even more" readily identifiable than the parking-lot owners in *Service Parking*. Probably it would have taken less effort to find out the names of the employees in the instant group than to find out the names of the lot owners in *Service Parking*. But the *reason* plaintiffs would need to distinguish this Circuit's decision in *Service Parking* is precisely that *Service Parking* is unfavorable to the plaintiffs' position and is not contradicted by any decision from this Circuit. To the extent that *Service Parking* offers guidance as to when a group member is "identifiable" so as to escape the group-defamation rule, it casts doubt on the plaintiffs' argument that they were sufficiently "identifiable" to sue for defamation of their group. In any event, any lack of guidance in our cases about when identifiable unnamed group members can sue for group defamation demonstrates that the law on this point was *not* "clearly established" as required to defeat a claim of immunity.

Another decision of the D.C. Circuit Court of Appeals, *Fowler v. Curtis Pub. Co.*, 78 F.Supp. 303 (D.D.C.1948), *aff'd*, 182 F.2d 377 (D.C.Cir.1950), shows that persons in the plaintiffs' position had no "clearly established" right to sue for defamation of their group. In *Fowler*, an article severely criticized local taxicab drivers as being rude to their patrons; the article was accompanied by a photograph of a "Columbia" taxicab. At that time, the company had only 59 drivers. Yet when one of those 59 cab drivers brought a libel action against the publisher, the district court dismissed the action based on its reading of group-defamation doctrine. The Court of Appeals affirmed.

Lastly, in *Riss & Co. v. Ass'n of American Railroads*, 187 F.Supp. 323 (D.D.C. 1960), this court dismissed libel counterclaims by defendant railroads. An article had disparaged "the rails," "the railways," and "the railroads." *See id.* at 325. From this description of the allegedly defamatory statements, *Riss* might look distinguish-able from the instant case. After all, Mr. Williams referred to a definite class of terminated employees, not to "District of Columbia employees" or "government workers" in the abstract. The *Riss* court's reasoning, however, shows that its holding clearly applies to the case at bar. In *Riss* this court gave the libel claimants the benefit of the doubt by treating the libel as if it were directed specifically at the 131 railroads belonging to the Association of American Railroads. *See id.* The court further posited that the publication referred to only the 101 railroads referred to in the first column of the article. *See id.* Significantly, this court still concluded,

> [T]he class concerned [101 railroads] is still a large one. *** The article does not concern more than railroads as a class or at most the [101] Class I railroads of "the Eastern and Western Territories." In the language of the cases, there is no reference to "some ascertained or ascertainable person."

*Id.* (quoting *Service Parking*, 92 F.2d at 506). Anyone reading the article could have identified the railroads which were members of the Association of American Railroads. Yet the court did not consider that enough to support a group-defamation claim.

In short, controlling decisions from the D.C. Circuit Court of Appeals and from this court—*Service Parking*, *Fowler* and *Riss*—cast serious doubt on whether an unnamed individual had a right to sue for group defamation in 1997, *even if* the listener could find out the group members' identities.

### 3. Pre–1997 Group–Defamation Decisions Outside the D.C. Circuit

In addition, the drafters of the Second Restatement of Torts suggest that 25 members is the *de facto* maximum group size for unnamed individuals to have a right to sue for defamation of the group. *See Restatement 2d of Torts*, § 564A comm. b. Lastly, as discussed *supra*, in 1997 there was persuasive authority from other Circuits and states consistent with this Circuit's view on individual recovery

for large-group defamation. In 1995, for instance, a U.S. District Court in New York noted, "[t]he parties have not identified any cases where individual members of groups larger than sixty have been permitted to go forward [with a group-defamation claim]." *Anyanwu v. CBS*, 887 F.Supp. 690, 692–93 (S.D.N.Y.1995); *accord Clark v. Maurer*, 824 F.2d 565, 566 (7th Cir.1987) (dismissing liberty-interest claim of 24 sanitation workers whose firing was announced in a press release, as "the charges, though public, did not identify the employees"); *Gintert v. Howard Pubs.*, 565 F.Supp. 829 (N.D.Ind.1983) (summary judgment for defendants on libel claim brought by eight plaintiffs on behalf of 165 property owners in subdivision); *Loeb v. Globe Newspaper Co.*, 489 F.Supp. 481 (D.Mass.1980) (summary judgment to defendants where 24 of 325 employees sued over an editorial which called the group of 325 "paranoid" but did not name them).

### 4. Summary

This Circuit's group-defamation precedents undermine the plaintiffs' position that large-group members in their circumstances had a right to sue for group defamation. The plaintiffs "have not brought to [the court's] attention any cases of controlling authority in [this] jurisdiction at the time of the incident which clearly established the rule on which they seek to rely, nor have they identified a consensus of cases of persuasive authority such that a reasonable officer [in Mr. Williams's position] could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 119 S.Ct. 1692, 1700, 143 L.Ed.2d 818 (1999) (police entitled to immunity for bringing media into plaintiffs' home during execution of warrant, because cases at the time did not clearly establish that media "ride-alongs" violate the Fourth Amendment). Thus, it cannot be said that Mr. Williams acted in disregard of clearly established rights. Accordingly, Mr.

Williams is entitled to qualified immunity as to his statements at the January 1997 press conference.

### D. The Relevance, if Any, of this Court's Previous Denial of Defendant's Motion for Summary-Judgment on the Plaintiffs' Defamation Claim

This court denied the defendants' motion for summary judgment on the defamation claim. *See* March 30, 1999 Opinion and June 15, 1999 Opinion Denying Reconsideration. The plaintiffs contend that this shows they had a clearly established right not to have their group derogated: "As the Court held ..., there is a material issue of fact regarding Defendant's statements and their possible violation of Plaintiffs' constitutional liberty interest creating an issue for a jury. Thus ... Defendant Williams does not qualify for [qualified immunity]." *See* Opp. to Mot. to Dis. at 5. This does not follow.

In denying the defendants summary judgment on the defamation claim, the court did not address whether persons in the plaintiffs' position have a "clearly established" right to sue for defamation of a large group. Rather, the court held only that it would be possible for a reasonable jury to find, as a matter of fact, that Mr. Williams stigmatized the plaintiffs so as to damage their reputations. "Qualified immunity insulates officials from liability when a *legal question* governing their conduct is unclear, not when a jury question concerning that conduct is close." *Harris v. D.C.*, 932 F.2d 10, 16 n. 4 (D.C.Cir.1991) (emphasis added). Thus, this court's refusal to grant summary judgment on defamation has no bearing on Mr. Williams's entitlement to qualified immunity.[7]

### E. No Discovery Necessary to Resolve Immunity Issue

■ The court has the authority to permit limited discovery directed to an

---

7. The plaintiffs also assert that the qualified-immunity analysis entails "a fact-specific inquiry into Defendant Williams' scope of knowledge of Plaintiffs' employment, skills

and work ethic. This is a matter which raises a question of fact for the jury thereby defeating Defendant's motion." *Opp. to Mot. to Dis.* at 6 n. 3. This is an incorrect statement of the

official claiming qualified immunity if the discovery is necessary to decide whether the official is entitled to the claimed immunity, "such as the actions that the official actually took...." *See Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 1597, 140 L.Ed.2d 759 (1998). In this case, however, the court concludes that discovery would not shed any light on the immunity issue. The parties agree on the facts relevant to the plaintiffs' defamation claim: (1) at a press conference; (2) called in relation to the termination of 165 District employees; (3) Mr. Williams referred to the group generally as "lazy and incompetent"; (4) the plaintiffs were among that group of 165 terminated employees, but (5) Mr. Williams never referred to any of the plaintiffs by name or singled out an individual employee or a smaller group for disparagement. The court has also assumed a sixth fact, that someone hearing Mr. Williams's remarks could have gone on to find out the identities of the terminated employees. Therefore, with all relevant facts either undisputed or assumed in the plaintiffs' favor, the success or failure of Mr. Williams's motion to dismiss turns on a purely legal question: whether a reasonable person in his position should have known that his comments violated a "clearly established" right. The court has answered that question in the negative.

## V. CONCLUSION

For the foregoing reasons, this court will grant Mr. Williams's motion to dismiss on the ground of qualified immunity.[8]

An appropriate Order directing the parties in a fashion consistent with this Memorandum Opinion is issued and executed simultaneously this 29 day of September, 1999.

## ORDER

### Granting Motion to Dismiss Defendant Williams on the Ground of Qualified Immunity

For the reasons set forth in this court's simultaneously executed and issued Memorandum Opinion.

It is this 23 day of September, 1999,

**ORDERED** that the motion to dismiss as to defendant Anthony Williams shall be and hereby is **GRANTED;** and it is

**FURTHER ORDERED** that the complaint shall be and hereby is **DISMISSED with prejudice** as to defendant Anthony Williams.

**SO ORDERED.**

---

law of qualified immunity. The factual basis for Mr. Williams's derogatory statements about the group of terminated employees could bear on whether those statements were true, or whether Mr. Williams made those statements in good faith. But Mr. Williams's knowledge of the terminated employees' skills and work ethic has nothing to do with whether a reasonable official in his position should have known those comments violated some clearly established right.

**8.** This decision does not dispose of the complaint as against the defendant District of Columbia. *See, e.g., Neal v. D.C.,* 1996 WL 680209 (D.C.Cir.1996) (determination whether individual defendants were entitled to official qualified immunity would not dispose of complaint as to defendant D.C. government).